197 N.J. Super. 378 (1984)
484 A.2d 1312
SAMUEL A. JACOBS, INDIVIDUALLY AND ON BEHALF OF ALL THOSE SIMILARLY SITUATED, PLAINTIFFS,
v.
GREAT PACIFIC CENTURY CORPORATION, DEFENDANT.
Superior Court of New Jersey, Law Division Bergen County.
Decided May 29, 1984.
*380 Bruce H. Nagel for plaintiffs (Meth, Nagel, Rice & Bausch, attorneys).
Michael R. Griffinger for defendant (Crummy, Del Deo, Dolan & Purcell, attorneys).
MINUSKIN, J.S.C.
For determination at the conclusion of a nonjury trial is whether interest earned on an escrowed deposit belongs to the buyer or the seller of a cooperative apartment if the purchase contract makes no provision.
Defendant sold cooperative apartments to the general public including plaintiff. Complying with New Jersey and New York *381 statutes[1], defendant provided for an escrow for the deposit moneys of the purchasers[2]. Plaintiff delivered a $7,000 deposit *382 to defendant when he signed his contract on October 16, 1980. When he closed title two months later, he was not credited with the earned interest. Nor were all of the other purchasers of defendant's cooperative apartments, a number of whom likewise made claim by filing suit. Because their actions sought credit for the interest and the suits were numerous and involved common questions of law and fact and would be dispositive of all the apartments sold by the defendant, the case was determined as a class action maintainable pursuant to R. 4:32-1 and -2.
Plaintiff claims that since New Jersey and New York statutes require deposit moneys to be held in escrow for the benefit of the purchasers, the interest earned is his property. N.J.S.A. 49:3-40 and N.Y.Gen.Bus.Law § 352-h. Defendant counters that although the statutes refer to the "deposit" as the purchaser's property, there is no reference to the disposition of interest earned on the deposit. Defendant further claims that it is entitled to the interest by virtue of its status as equitable owner of the deposit under the doctrine of equitable conversion. Moreover, defendant contends that in any event plaintiff waived his rights and is estopped from asserting any claim due to the fact that he closed on the property and the claim for interest merged into and became part of the closing statement.
The doctrine of equitable conversion, grounded in equity, provides that a buyer who contracts to purchase property gains equitable title to the premises to be conveyed once the contingencies to the contract are satisfied or waived. By the *383 same token and at the same time, the seller of the premises obtains equitable title to the purchase funds. Courtney v. Hanson, 3 N.J. 571, 575 (1950); Mango v. Brodsko, 32 N.J. Super. 616, 619-620 (Ch.Div. 1954). This theory is regarded as a "fiction resting upon the principle that equity regards things which are directed to be done as having actually been performed where nothing intervenes which ought to prevent such a performance." Fidelity & Phila. Trust Co. v. Harloff, 133 N.J. Eq. 44, 56 (Ch. 1943).
As an equitable principle well recognized by our courts, the doctrine of equitable conversion must be used "only when required by necessity and justice," 27 Am.Jur.2d, Equitable Conversion, § 3; see also N.J. Highway Auth. v. Henry A. Raemsch Coal Co., 40 N.J. Super. 355, 361 (Law Div. 1956), and must never be used where it contravenes public policy, Noyes v. Estate of Cohen, 123 N.J. Super. 471 (Ch.Div. 1973), or, where it creates a manifestly unjust result. In Noyes, the court said:
That concept was devised to assure justice between the parties to a real property transaction. It is a fiction of law, and as such, cannot be extended beyond the special purposes which it was created to serve. And, "the doctrine will never be employed for the purpose of circumventing public policy or to sustain a fraud or a wrongful act." [at 478-479]
Applying equitable conversion in the instant case so as to convert the deposit to be the seller's property contravenes the public policies of the New York and New Jersey statutes which seek to preserve those deposit moneys as the property of the purchasers. The intent of those statutes is to prevent purchasers from losing their deposit moneys in the event of seller's bankruptcy or other dissipation of the funds.
In addition, invoking equitable conversion produces an unjust result. The parties agreed to a certain price in the purchase agreement. The seller agreed that that sum would be delivered at closing. The effect of permitting the seller to benefit from the earned interest would be receipt by the seller of a sum greater than that which it bargained for and a sum greater than the purchaser agreed to pay. The result would be *384 inequitable and the doctrine should not be used for that purpose.
More importantly, the controlling statutes are clear and unambiguous when they state "all monies received in connection therewith, including deposits or advances therefor, shall continue to be the money of the person making such purchase, deposit or advance." N.J.S.A. 49:3-40; N.Y.Gen. Bus.Law § 352-h. The language "all monies received" is not limiting and it is clear that the Legislatures intended that proceeds received from whatever source should belong to the purchaser. When the statute is clear, its intent must be determined from the express language. As noted in State v. Butler, 89 N.J. 220 (1982):
As a general rule of statutory construction, we look first to the language of the statute. If the statute is clear and unambiguous on its face and admits of only one interpretation, we need delve no deeper than the act's literal terms to divine the Legislature's intent. [at 224]
Defendant's argument of waiver, estoppel and merger is not convincing. Plaintiff along with the other purchasers were confronted with the interest problem for the first time at closing. There, in the midst of many more important concerns, plaintiff was informed by the seller that the earned escrow interest did not belong to him. The small sum involved (although important when joined with other purchasers' claims) did not reasonably justify a refusal to proceed with the closing of title. The seller in that setting had the benefit of a far superior bargaining position. Under those circumstances, it should not be permitted to assert the claim of waiver, estoppel and merger. McDonald v. Mianecki, 79 N.J. 275 (1979). In McDonald, the court said:
It is not in expertise alone that the builder-vendor is generally superior. In the vast majority of cases the vendor also enjoys superior bargaining position.. . Standard form contracts are generally utilized and [e]xpress warranties are rarely given, expensive, and impractical for most buyers to negotiate. Inevitably the buyer is forced to rely on the skills of the seller. [Id. at 289]
*385 Accordingly, on the basis of the foregoing, judgment will be entered in favor of plaintiff and the class of individuals similarly situated in the class action suit.
NOTES
[1] N.Y.Gen.Bus.Law § 352 and N.J.S.A. 49:3-40 require the deposits to be held in escrow and to be considered as the buyer's property until the sale is consummated.

N.Y.Gen.Bus.Law § 352-h provides that: "Whenever . .. any ... corporation ... offers or sells securities described in subdivision one of section three hundred fifty-two-e of this article to the public in or from the state of New York, then all monies received in connection therewith, including deposits or advances therefor, shall continue to be the money of the person making such purchase, deposit or advance, and shall be held in trust by the ... corporation ... offering or selling such securities and shall not be commingled with the personal moneys or become an asset of the ... corporation ... receiving the same ... and said funds shall remain in trust until actually employed in connection with the consummation of the transaction; and in the event... the transaction does not result in the acquisition of the real estate ... for any reason or reasons, then all moneys so collected less such amounts actually employed in connection with the consummation of the transaction shall be fully returned to the investors. Any provision of any contract or agreement or understanding whether oral or in writing, whereby a person who so purchased such securities waives any provision of this section is absolutely void...."
N.J.S.A. 49:3-40 provides that: "Whenever hereafter any person, offers or sells real estate securities to the public in or from the State of New Jersey, then all moneys received in connection therewith, including deposits or advances therefor, shall continue to be the money of the person making such purchase, deposit or advance, and shall be held in trust by the person offering or selling such real estate securities and shall not be commingled with the personal moneys or become an asset of the person, receiving the same, and said funds shall remain in trust until actually employed in connection with the consummation of the transaction; and in the event . .. the transaction does not result in the acquisition of the real estate ... for any reason or reasons, then all moneys so collected less such amounts actually employed in connection with the consummation of the transaction shall be fully returned to the investors. Any provision of any contract or agreement or understanding, whether oral or in writing, whereby a person who so purchases such real estate securities waives any provision of this section is absolutely void...."
[2] Defendant's prospectus and offering statement required under New York law made reference to the escrow when it stated: "All monies paid by purchasers will be deposited ... in a special interest bearing account ... and will be held in trust... as required by sections 352(e)(2) and 352(h) of the General Business Law of the State of New York, until actually employed in connection with the consummation of this Plan as herein described. Funds deposited in escrow will bear interest at 5 1/4% per annum...."

Likewise, the purchase agreement acknowledged the escrow arrangement by setting forth that: "All monies received by the Seller on account of the purchase price shall be deposited in trust in an interest bearing bank account ... until actually transferred to the Seller in connection with the closing under the Purchase Agreement. Such account will bear interest at the rate ... [of] 5 1/4% per annum. Until such deposit has been made, the Seller shall hold all monies received by its employees or agents in trust."