204 N.J. Super. 605 (1985)
499 A.2d 1023
SAMUEL A. JACOBS, INDIVIDUALLY AND ON BEHALF OF ALL THOSE SIMILARLY SITUATED, PLAINTIFFS-RESPONDENTS AND CROSS-APPELLANTS,
v.
GREAT PACIFIC CENTURY CORPORATION, DEFENDANT-APPELLANT AND CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 18, 1985.
Decided October 15, 1985.
*606 Before Judges FRITZ, BRODY and GAYNOR.
Michael R. Griffinger argued the cause for appellant/cross-respondent (Crummy, Del Deo, Dolan, Griffinger & Vecchione, attorneys; Michael R. Griffinger, of counsel and on the brief).
Bruce H. Nagel argued the cause for respondents/cross-appellants (Meth, Nagel, Rice, Woehling & Bausch, attorneys; Bruce H. Nagel, on the brief).
The opinion of the court was delivered by BRODY, J.A.D.
Plaintiff and other members of the class he represents purchased from defendant (seller) stock in a corporation that owns Century Tower, a cooperative apartment building in Fort Lee. Each purchaser also entered into a proprietary lease of one of the apartments. The sales closed leaving unresolved the single question raised in this litigation: whether by the terms of their written agreement the seller or the purchasers are entitled to *607 the interest the "down payment" earned before closing. The agreement contains no express provision on the point.
In an opinion reported at 197 N.J. Super. 378, the Law Division judge held that the purchasers are entitled to the interest because the sale of these cooperative apartments is regulated by New York and New Jersey statutes that both provide, "[D]eposits ... shall continue to be the money of the person making such ... deposit...." The judge accordingly entered judgment in favor of the purchasers in the amount of $38,514.44 from which $16,420.80 was awarded for attorneys' fees. See R. 4:42-9(a)(2); Sarner v. Sarner, 38 N.J. 463, 467-469 (1962). The trial judge denied the purchasers' further demands for triple damages under the Consumer Fraud Act, N.J.S.A. 56:8-19, and prejudgment interest. Both sides appeal. We affirm the judgment, but arrive at the result on the interest issue a different way.
Each purchaser paid the seller 10% of the purchase price as a "down payment" under the terms of the agreement. The agreement, however, provides the following with respect to that sum:
All monies received by the Seller on account of the Purchase Price shall be deposited in trust in an interest bearing bank account at Citibank, N.A., under the name "One Century City Special Account", until actually transferred to the Seller in connection with the closing under this Purchase Agreement.... Until such deposit has been made, the Seller shall hold all monies received by its employees or agents in trust.
The agreement also provides that "[a]ll monies paid by purchasers... will be held in trust ... as required by Sections 352(e)(2) and 352(h) of the General Business Law of the State of New York...."
N.Y.Gen.Bus.Law § 352-h and N.J.S.A. 49:3-40 provide in part:
Whenever hereafter any person, offers or sells real estate securities to the public in or from the State of New York [N.J.S.A. 49:3-40 reads "State of New Jersey"], then all moneys received in connection therewith, including deposits or advances therefor, shall continue to be the money of the person making such purchase, deposit or advance, and shall be held in trust by the person offering or selling such real estate securities and shall not be commingled with the *608 personal moneys or become an asset of the person, receiving the same, and said funds shall remain in trust until actually employed in connection with the consummation of the transaction; ....
The trial judge applied the statutes and held that the purchasers are entitled to the interest because under both statutes "deposits ... shall continue to be the money of the person making such ... deposit...." The judge rejected the seller's argument that the Legislatures intended the statutes to apply only to the sale of real estate securities for investment and not, as here, the sale of securities incidental to ownership and occupancy of a residential apartment in a cooperative. We need not decide the point because apart from what the Legislatures may have intended, the parties expressly incorporated the provisions of the New York statute into their agreement.
We disagree with the trial judge's conclusion that the statute deems the purchaser the owner of the deposit for all purposes. The statute provides that a deposit "shall remain in trust until actually employed in connection with the consummation of the transaction; ...." Thus, under the statute neither a seller nor a purchaser "owns" the deposit to the exclusion of the other during the period when the interest is earned. As the judge noted, the statutory language was intended by the Legislatures to prevent a "down payment" from becoming a seller's asset, which a purchaser could lose in the event the seller becomes insolvent or absconds. The statutory language was not intended to determine who is entitled to interest on the "down payment." We must therefore search further to discover the parties' unexpressed intention.
An implied covenant can fill a gap in an agreement where the terms of the covenant can be inferred from the "subject matter and circumstances" of the agreement and from its "written words." See Marini v. Ireland, 56 N.J. 130, 143 (1970). The inference we draw from these sources is that the parties intended the deposit to be a pledge securing the seller against a purchaser's default. Just as the income from a pledge ultimately belongs to the pledgor if he performs his obligation, so *609 the interest on this deposit ultimately belongs to the purchaser if he performs his obligation to close.
A pledge is personal property transferred to the pledgee as security for the pledgor's payment of a debt or other obligation. See Jersey Security Co. v. Lottimer, 20 N.J. Misc. 432, 433-434, 28 A.2d 623, 625 (D.Ct. 1942). Whether property is a pledge depends upon the intention of the parties, not the label they attach to it in their agreement. Bardsley v. First Nat. Bank & Trust Co. of Montclair, 111 N.J.L. 512, 515 (E. & A. 1933). The agreement here refers to the deposit as a "down payment," but the parties agreed that it be held in trust. We therefore turn to the terms of that trust to learn the parties' intention.
The agreement expressly provides for disposition of the deposit and interest in the event of any one of six contingencies. These provisions are accurately paraphrased in the seller's brief as follows:
(1) If a contract is cancelled due to failure of the purchaser to obtain a mortgage, the down payment is to be refunded to the purchaser with interest.
(2) Each sale is subject to the approval of the managing agent for the building. Thus, if any contract were cancelled for this reason, all sums paid to seller would have to be returned to the purchasers with interest.
(3) If the seller fails to make or complete necessary repairs, the purchaser may rescind the contract and obtain a refund of the deposit with interest.
(4) If the apartment lease is terminated by One Century City, seller must refund to the purchaser the deposit with interest.
(5) If the seller is unable to transfer the Lease Shares in accordance with the contract, the purchaser would be entitled to refund of the deposit with interest.
(6) The seller may elect to retain the deposit and accrued interest upon the purchaser's default in payment of the purchase price.
Except for "the purchaser's default in payment of the purchase price," the deposit is always returned to the purchaser. Even when the transaction closes, the deposit is in effect returned to the purchaser in the form of a credit against the purchase price. In short, the deposit is a pledge because it serves only to secure the seller against a purchaser's default.
*610 Treating the deposit as a pledge, we are on more familiar common-law ground. The rule is fully stated in McCrea v. Yule, 68 N.J.L. 465, 467-468 (Sup.Ct. 1902):
A pledgee of personal property, assigned as collateral security, has the right to collect the interest, dividends and income accruing on the collateral assigned, accounting to the pledgor on the redemption of the pledge. In making such collections the pledgee is a trustee of the pledgor to see to the proper application of the funds collected or to refund the same to the pledgor if the debt be otherwise paid.
This statement of the rule was quoted with approval in Security Trust Co. v. Edwards, 90 N.J.L. 558, 563 (E. & A. 1917).
Because there is no difference between a pledge to secure repayment of a loan and the deposit made under the terms of this agreement to secure a purchaser's payment for the apartment, they should be treated the same. In the case of the loan, the lender may not use the pledge but has the right to collect its income, and in the event of default may then use the pledge and its income to satisfy the loan. If the borrower repays the loan, however, the lender must return the pledge and its income to the borrower. Here the seller may not use the deposit because of the trust but has the right to collect its interest, and in the event of the purchaser's default may then use the deposit and its interest to satisfy his loss. If the purchaser closes, however, the seller must return the deposit and its interest to the purchaser in the form of a credit against the purchase price.
This resolution of the question accords with the intent of the parties as more directly inferred from the written words of their agreement regarding disposition of the interest where there is no closing. The parties expressly agreed that the seller is entitled to the interest only if the failure to close is the purchaser's fault. If the seller or neither party is at fault, the agreement provides that the deposit and its interest are returned to the purchaser. The parties having provided that when there is no closing a fault-free purchaser receives the interest even though the seller is also free of fault, it may reasonably be inferred that they intended the same result when there is a closing.
*611 We substantially agree with the trial judge's disposition of seller's additional contentions below. The seller's contentions on appeal not discussed by the trial judge and the purchasers' contentions on the cross-appeal are clearly without merit. R. 2:11-3(e)(1)(E).
Affirmed.