276 N.J. Super. 465 (1994)
648 A.2d 256
BARNETT AND HERENCHAK, INC., PLAINTIFF-RESPONDENT,
v.
STATE OF NEW JERSEY, DEPARTMENT OF TRANSPORTATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 7, 1994.
Decided August 19, 1994.
Before Judges MICHELS, SKILLMAN and WEFING.
Brett D. Rickman, Deputy Attorney General, argued the cause for appellant (Deborah T. Poritz, Attorney General of New Jersey, *466 attorney; Joseph L. Yannotti, Assistant Attorney General, of counsel; Mr. Rickman, on the brief).
Richard K. Sacks argued the cause for respondent (Mr. Sacks, attorney; Jeffrey S. Quinn and Mr. Sacks, on the brief).
PER CURIAM.
Defendant State of New Jersey, Department of Transportation, (State) appeals from a judgment of the Law Division that awarded plaintiff Barnett & Herenchak, Inc. damages in the sum of $85,245.70 for engineering services rendered to the State under several contracts.
Plaintiff entered into several contracts with the State for the performance of engineering consultant services in connection with modification of several existing bridges within the State of New Jersey. The contracts were standard consulting contracts which provided for payment on a cost-plus basis. The first of these contracts, in pertinent part, specifically provided for payment to plaintiff as follows:
Direct actual straight time payroll paid to employees and to principals while performing technical work on a project, not to exceed the approved schedule of hourly pay rates in paragraph O; (an equivalent payroll rate per hour as determined by prevailing State Policy will be used for principals time when engaged in technical work under Part FIRST, Paragraph O), plus
(b) The premium portion of overtime hourly wages for approved overtime hours, not to exceed the approved schedule of hourly pay rates in Paragraph O, plus
(c) 110% of the actual direct straight time and approved overtime payroll to cover estimated fringe costs and overhead, plus
(d) Out-of-pocket expenses which are directly chargeable to the project and are peculiar to the project and which are not normally provided as part of the administrative overhead of the Consultant, at cost. (Payment for use of motor vehicles is limited to the prevailing rate per mile as determined by State Policy accumulated in pertinent work on the project, exclusive of commutation).
The remainder of the contracts contained similar provisions. The contracts also provided that the final payments would be subject to audit in accordance with the following provisions:
C. Final payment for services will be subject to audit to ascertain conformity with generally accepted cost principles, in particular Federal Procurement Regulations *467 Subpart 1-15.2  "Principles and Procedures for use in Cost-Reimbursement Type Supply and Research Contracts with Commercial Organizations."
D. A final payment for unpaid services due on A-1 above at the time of acceptance of all work specified in part FIRST shall be made on the basis of:
1. An audit of direct payroll actually paid to employees while engaged exclusively upon the project on the basis of the approved schedule of hourly pay rates in Part FIRST, Paragraph C,
2. An audit of actual fringe costs and overhead, not to exceed 110% of D.1.
3. An audit of electronic equipment including operators at actual cost, plus
4. An audit of out-of-pocket expenses which are directly chargeable to the project.
The State did not dispute that engineering consultant services were rendered by plaintiff or that such services were satisfactory. Rather, the State argued that plaintiff improperly billed it for substantial non-business expenses and for labor costs that were not actually incurred. The State conducted two audits of plaintiff's books and records in connection with these contracts. The first audit covered the period July 25, 1979 through August 31, 1981. The second audit covered the period September 1, 1981 through August 31, 1986. According to the State auditors, plaintiff's records and books were in such disarray that they had to perform accounting services in order to place the book in an "auditable" state.
The audits revealed numerous deficiencies in bookkeeping and in the types of costs which were invoiced by plaintiff for reimbursement by the State. The first audit report of January 21, 1983 showed that the State paid plaintiff $261,322.84 for the period from 1978 through 1981. This audit also revealed substantial internal problems within plaintiff's recordkeeping system which resulted in personal expenses and labor costs being improperly billed to the State. The auditors discovered that the types of internal controls normally imposed by a business, such as the countersigning of timesheets and the maintenance of bank reconciliation records, were generally non-existent or only rarely evidenced within plaintiff's books and records. The auditors also discovered that plaintiff was not segregating its direct and indirect payroll accounts as is necessary for proper calculation of overhead.
*468 In accordance with the provisions of the State's contracts, plaintiff could only be reimbursed for its actual costs, direct and indirect. According to the auditors, plaintiff failed to pay Alexander Herenchak, its principal owner, and certain other employees of plaintiff for all indirect labor performed, thereby reducing allowable overhead. Plaintiff's failure to actually pay for much of its indirect labor resulted in overbilling for overhead. The failure to pay Herenchak and other employees for their direct labor while billing the State for this labor also resulted in overpayments to plaintiff for direct labor.
The audit further revealed that plaintiff had been billing personal expenses as business expenses. During the fiscal years ending in 1978 and 1979, non-business related expenses totaled $31,087.00 and $28,896.00, respectively. For example, according to the State auditors, these expenses included Cuban cigars, depreciation of a farm building on Herenchak's farm, non-business telephone/nonbusiness automobile expenses and insurance, personal trips for Herenchak and his wife, tractor parts for Herenchak's farm tractor, and swimming pool supplies. These findings by the State auditors significantly challenged the reliability of plaintiff's records and billing procedures. According to the State's first audit report, the State overpaid plaintiff $3,301.30.
A second audit report for the years 1982 through 1986 was issued on October 3, 1988. This report showed that the State paid plaintiff during this period $201,993.83. This audit also uncovered several deficiencies in plaintiff's recordkeeping and billing procedures. Although plaintiff's records included more internal controls than were present during the first audit period, plaintiff still failed to properly segregate cost ledgers for direct-indirect costs and payroll. The audit also revealed that plaintiff was still improperly including non-business related expenses in overhead. Additionally, the audit revealed that plaintiff was still not paying Herenchak and certain other employees for all the hours it was billing the State. However, according to Herenchak, the State had been told that plaintiff had cash-flow problems and that if the *469 State paid plaintiff, plaintiff would then pay Herenchak a salary equal to the amount already billed to the State.
Because plaintiff had not paid salaries for which it had billed the State and because plaintiff had not broken down direct and indirect costs, the State revised the billings submitted by plaintiff to reflect the direct payments actually made. Based on the auditor's calculations for fiscal years 1982 through 1986, plaintiff had overbilled the State some $38,315 for direct labor costs not incurred as actual payroll costs. In addition, the State adjusted the amount of overhead claimed by plaintiff, disallowing $227,294.66 as non-related business expenses, which produced a $59,330.82 overpayment by the State for overhead expenses alone.
According to these audits, the State overpaid plaintiff a total of $99,828.57 for the engineering consultant services performed under the several contracts. The State refused, therefore, to pay plaintiff's additional invoices, totaling $88,549.
Plaintiff instituted this action against the State, seeking to recover $89,265.42 for payments allegedly due under its contracts. The State denied that it was under any liability to plaintiff and counterclaimed to recover the amount of the overpayments. At the conclusion of a lengthy bench trial, the trial court found that plaintiff owed the State $3,303.30[1] and that the State owed plaintiff $88,549. Judgment was thereupon entered in favor of plaintiff against the State in the sum of $85,245.70.
In arriving at this decision, the trial court appears to have ignored the clear and unambiguous language of the cost-plus contracts in finding that plaintiff was entitled to payment for the engineering services rendered to the State, in part, reasoning:
Because the contract was so modified in length and scope, the court will attempt to interpret the contract and rend[er] an equitable decision regarding it. The principle purpose of the agreements was to have the bridges designed well to serve the public. Everyone agrees that purpose has been accomplished. Obviously, *470 Barnett and Herenchak were to be compensated for these tasks, but at a fair and reasonable rate, and within certain parameters to DOT. Barnett and Herenchak submitted bills for a number of years under the admittedly poor method of estimating and accounting, and the DOT, while commenting and criticizing from the beginning acquiesced, therefore, it was a fair implication that sloppy numbers and higher costs estimates would be tolerated in exchange for good work on the bridges. Therefore, it was implied that this was the price to be paid for the artist, so to speak. Since DOT was totally satisfied with Barnett and Herenchak, it would seem incumbent upon the government who is held to a stricter standard, to either alert the individual to the deviations, or discontinue the contract, but to receive the benefit of the bargain, and later advise that payment is not forthcoming, is not turning the square corners previously discussed. Key to this Court's view of what transpired was testimony such as that of Mr. Jagniatkowski, who said, since backup data for invoices was missing, he had no idea what Mr. Herenchak did, nor was he clear on which category defined principal within the proposal, but all the work was satisfactory. Nevertheless, he was used to support the premises that there was too much principal billed. With [that] type of evidence it would be impossible for the Court to revisit all the billings and determine what should have been paid in terms of salaries that would then affect the overhead. Therefore, DOT's counter-claim that requests the Court to do just that must fail. The formulas presented may be correct and within the original contract, but the testimony that supports the figures plugged into those calculations was not credible. I will, however, award the state $3,303.30 due from the first audit, since all the procedures were proper for that audit, and all the parties seem to agree that this amount was due to the state.
I did find Mr. Herenchak's testimony regarding the money due to him under the outstanding invoices credible. Since the state's attack on these was primarily based on the same factual attack described above on their counter-claim, I find it ineffective on the facts as presented, and under the law as previously stated, therefore, I will award Mr. Herenchak the full amount of the money due under his claim.
The State appealed.
The State contends, among other things, that the trial court failed to make the necessary findings of fact and conclusions of law as required by R. 1:7-4 to support its ultimate decision to award plaintiff the full amount of money claimed. More precisely, the State argues that although the trial court referred to the testimony at length in its opinion, its findings of fact were unsubstantiated or too conclusory and its conclusions of law were unsupported by fact. Furthermore, the State complains that despite the trial court's recitation of the testimony relating to the calculation of overhead and its notation that the contracts permitted a maximum overhead of 110 percent to 115 percent, the trial court, "without further explanation, found [the State's] position to be untenable *471 because [plaintiff's] actual overhead was in excess of that allowed by the contract." The State argues that it presented substantial testimony "in an effort to facilitate the court's ability to `revisit all the billings and determine what should have been paid in terms of salaries that would then affect overhead' but the court made the determination that this process was `impossible' and, therefore, determined that [its] counterclaim must fail."
We are satisfied from our study of the record and the arguments presented that the matter must be remanded to the trial court for reconsideration and to enable the trial court to make the mandated findings of fact and conclusions of law so that we may properly review this matter. It is required that in a non-jury civil action the trial court, at the conclusion of the trial, shall by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon. R. 1:7-4. As our Supreme Court so appropriately observed in Curtis v. Finneran, 83 N.J. 563, 569-70, 417 A.2d 15 (1980):
Failure to perform that duty "constitutes a disservice to the litigants, the attorneys and the appellate court." Kenwood Assocs. v. Bd. of Adj. Englewood, 141 N.J. Super. 1, 4 [357 A.2d 55] (App.Div. 1976). Naked conclusions do not satisfy the purpose of R. 1:7-4. Rather, the trial court must state clearly its factual findings and correlate them with the relevant legal conclusions. See State v. Singletary, 165 N.J. Super. 421, 424-425 [398 A.2d 576] (App.Div. 1979), certif. den. 81 N.J. 50 [404 A.2d 1150] (1979); Kenwood, supra; Wertlake v. Wertlake, 137 N.J. Super. 476, 485-486, 349 A.2d 552 (App.Div. 1975). See generally Brochin and Sandler, Appellate Review of Facts in New Jersey, Jury and Non-Jury Cases, 12 Rutgers L.Rev. 482 (1957); Conford, Findings of Facts and Conclusions of Law, 92 N.J.L.J. 225 (1969).
In Reiser v. Simon, 63 N.J. Super. 297, 300-01, 164 A.2d 650 (App.Div. 1960), we also emphasized that:
A trial judge must be explicit in his recital of the evidence and in his factual findings and must so correlate them to his legal conclusions that the . .. judgment entered manifestly appears to be undergirded by legal proof of substantial probative value and by specific factual findings thereon.
See also Monte v. Monte, 212 N.J. Super. 557, 565, 515 A.2d 1233 (App.Div. 1986).
Here, the trial court did not comply with the clear mandate of R. 1:7-4. The trial court had a duty in its role as the factfinder in *472 this non-jury civil case to carefully analyze the evidence, including all the billing records to determine whether or not the bills submitted by plaintiff to the State were in accordance with the terms of the contracts. These contracts provided in clear and unambiguous language the precise method of payment and the limitations upon such payment. The trial court did not fulfill its duty by simply saying that "it would be impossible for the Court to revisit all the billings and determine what should have been paid in terms of salaries that would then affect the overhead." Moreover, the trial court did not properly resolve the conflict produced by the State's proofs, particularly, the two audit reports, by simply saying "I find [them] ineffective on the facts as presented." The trial court had a duty to explain the reason that it rejected the audits and some testimony, while accepting other testimony, particularly in view of the fact that the method of payment was clearly defined by the contracts.
Finally, we are satisfied that the trial court had the responsibility to explain in detail why it awarded the full amount of money claimed by Herenchak, which facially is in contravention of the payment provisions of the contracts. The trial courts must not lose sight that the polestar of contract construction is to discover the intention of the parties as revealed by the language used by them. Jacobs v. Great Pacific Century Corp., 104 N.J. 580, 582, 518 A.2d 223 (1986); Kearny PBA Local # 21 v. Town of Kearny, 81 N.J. 208, 221-22, 405 A.2d 393 (1979); Atlantic Northern Airlines, Inc. v. Schwimmer, 12 N.J. 293, 301, 96 A.2d 652 (1953); Casriel v. King, 2 N.J. 45, 50, 65 A.2d 514 (1949). To this end, the language used must be interpreted "`in accord with justice and common sense....'" Krosnowski v. Krosnowski, 22 N.J. 376, 387, 126 A.2d 182 (1956) (citation omitted). As our Supreme Court noted in Tessmar v. Grosner, 23 N.J. 193, 201, 128 A.2d 467 (1957):
In the quest for the common intention of the parties to a contract the court must consider the relations of the parties, the attendant circumstances, and the objects they were trying to attain. An agreement must be construed in the context of the circumstances under which it was entered into and it must be accorded a rational *473 meaning in keeping with the express general purpose. Cameron v. International, etc., Union No. 384, 118 N.J. Eq. 11 [176 A. 692] (E. & A. 1935); Mantell v. International Plastic Harmonica Corp., 141 N.J. Eq. 379 [55 A.2d 250] (E. & A. 1947); Heuer v. Rubin, 1 N.J. 251 [62 A.2d 812] (1949); Casriel v. King, 2 N.J. 45 [65 A.2d 514] (1949); Owens v. Press Publishing Co., 20 N.J. 537, 543 [120 A.2d 442] (1956).
See also Jacobs v. Great Pacific Century Corp., supra, 104 N.J. at 582, 518 A.2d 223; Fidelity Union Trust Co. v. Robert, 36 N.J. 561, 567, 178 A.2d 185 (1962); Karl's Sales & Serv. v. Gimbel Bros., 249 N.J. Super. 487, 492-93, 592 A.2d 647 (App.Div.), certif. denied, 127 N.J. 548, 606 A.2d 362 (1991); Anthony L. Petters Diner, Inc. v. Stellakis, 202 N.J. Super. 11, 28, 493 A.2d 1261 (App.Div. 1985); Bruenn v. Switlik, 185 N.J. Super. 97, 105, 447 A.2d 583 (App.Div.), certif. denied, 91 N.J. 536, 453 A.2d 857 (1982); Insurance Co. of Penna. v. Palmieri, 81 N.J. Super. 170, 179, 195 A.2d 205 (App.Div. 1963), certif. denied, 41 N.J. 389, 197 A.2d 15 (1964); Union County U-Drive It v. Blomeley, 48 N.J. Super. 252, 256, 137 A.2d 428 (App.Div. 1958). In light of these settled principles, the trial court should have explained more fully why it ignored the clear and unambiguous terms of the contract payment provisions and awarded plaintiff the full amount of its claim.
Accordingly, we are constrained to remand the matter to the trial court for reconsideration and to make appropriate findings of fact and conclusions of law as required by R. 1:7-4. Because of the complexity of this matter and the trial court's difficulty in "revisiting" all the billings and determining what salaries should have been paid to Herenchak and other employees and what were proper overhead expenses, we leave to the trial court's discretion whether to require further testimony or documentation on these issues from the parties. Jurisdiction is not retained.
NOTES
[1] This amount varies without explanation from the $3,301.30 found by State auditors.