276 N.J. Super. 489 (1994)
648 A.2d 269
LINDA PAGANO, ADMINISTRATRIX OF THE ESTATE OF ROSE GUARINO, PLAINTIFF-RESPONDENT,
v.
UNITED JERSEY BANK (FORMERLY PEOPLES TRUST OF NEW JERSEY), DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 13, 1994.
Decided October 11, 1994.
*492 Before Judges PRESSLER, CONLEY and NEWMAN.
Marian B. Copeland, attorney for appellant.
Louis Mangano, attorney for respondent (Martin N. Crevina of Buckalew, Frizzell & Crevina, on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This appeal requires us to consider whether a presumption of payment applies to a savings account deposit evidenced by an uncancelled passbook where the bank has no record of the account and the passbook is presented with a demand for payment by the depositor's heir twenty years and two months after the last transaction recorded in the passbook. In the circumstances here, we are satisfied that the bank is not entitled to such a presumption. Accordingly we affirm the judgment appealed from.
Rose Guarino, a lifelong resident of Lodi, New Jersey, died in June 1990 survived by her only child, plaintiff Linda Pagano. Mrs. Guarino had lived by herself after her husband's death in 1976, and in her later years supported herself exclusively by means of social security payments and a federal rent subsidy. Her estate consisted only of her personal effects. Several months after Mrs. Guarino's death, plaintiff, who later qualified as her administratrix, found the passbook which is the subject of this *493 action in her mother's bureau drawer. The passbook showed that on July 10, 1970, Mrs. Guarino had deposited $4,400 in a pyramid savings account at a branch of Peoples Trust of New Jersey, a state-chartered commercial bank which later changed its name to United Jersey Bank (UJB). That was the only transaction noted in the passbook, which bore no stamp or other marking showing that the account had been closed or the book canceled. Nor was there any posting in the book of any interest paid by the bank on the account. Plaintiff, who had had no prior knowledge of the account despite her close relationship with her mother, presented the passbook at the branch office of UJB in August or September 1990. She demanded payment. Payment was refused.
This action ensued against defendant UJB. UJB, which had been unable to find any internal record corroborating the existence of the account, assumed that it must have been long since closed by the depositor and the proceeds paid to her. It therefore asserted the affirmative defense of payment, claiming its entitlement to a common-law presumption of payment of a debt after a lapse of twenty years. The trial judge held that no such presumption applied in the circumstances here and submitted the cause to the jury, which returned a verdict in plaintiff's favor in the amount of the deposit. The judge ordered that interest be added at the bank's passbook account rates. The gravamen of defendant's appeal is the court's rejection of its asserted right to a rebuttable presumption of payment as well its rejection of its asserted limitations defense.
According to defendant's proofs, a bank-wide search of its retained records, undertaken after plaintiff's presentation of the passbook, failed to disclose any indication of the account's existence. More specifically, defendant's employees testified that there was no extant record of any kind demonstrating that there was either an active or a closed account in Mrs. Guarino's name or identified by her social security number. Based on records still in existence, the bank determined that there was no record of an active account at least since 1983, no record of an escheat of the *494 account at least since 1980, no record of a publication of notice of the account as inactive at least since 1975, and no indication of an interest notice sent by the bank to the depositor by way of a 1099 form at least since 1983. With respect to the uncancelled passbook in plaintiff's possession, bank personnel explained that ordinarily a depositor must fill out a withdrawal order and present the passbook for appropriate notation when either all or part of a passbook savings account is withdrawn. A depositor who claims to have lost the passbook is required to execute an affidavit of lost passbook and is accorded access to the funds thirty days later. Thus funds may not be withdrawn from a passbook savings account without both a withdrawal order and either presentation of the book for appropriate marking or execution of the affidavit. The bank did not, however, retain such affidavits executed prior to 1980, and its search of its file of affidavits executed thereafter did not turn up one by Mrs. Guarino.[1] Defendant's speculation, therefore, was that Mrs. Guarino had either withdrawn the deposit some time prior to 1980 by executing a lost-passbook affidavit or that she had withdrawn it by presenting the passbook which the teller neglected to stamp.
The only other proofs consisted of expert testimony offered by both parties describing applicable state and federal regulation and internal bank policy regarding record retention. The substance of the testimony, not in the end particularly helpful, was that state regulation of minimum retention periods for various types of bank records applies only to state-chartered savings and loan associations, see N.J.S.A. 17:12B-48(21) implemented by *495 N.J.A.C. 3:26-1.1(a), and that federal regulation of retention periods applies only to nationally-chartered banks, 12 U.S.C.A. 1829b implemented by 31 C.F.R. §§ 103.34(b), 103.38(d). Thus there is no prescribed regulatory period for retention by state-chartered commercial banks, which, however, generally choose as a matter of individual policy to follow the recommendation of the New Jersey State Bankers Association that federal regulation be complied with. In respect of savings and loan associations, the originally prescribed retention period of twenty years for withdrawal slips was reduced in December 1990 to ten years; the retention period for lost-passbook affidavits is seven years. In respect of national banks, the regulatory prescription is five years for all records required to be retained. The judge denied defendant's application to strike the evidence regarding the savings and loan periods, charging the jury that the time periods for both state savings and loans and nationally chartered banks were to be viewed by it as only illustrative of banking practice, there being no concomitant regulation applicable to defendant bank.
We first address defendant's claim of applicability of the six-year statute of limitations, N.J.S.A. 2A:14-1. We have no doubt that the transaction is indeed subject to that limitations period. The question is when the statutory period starts to run. We think it plain that the triggering event is hardly the making of the deposit itself. It is, rather, the depositor's demand for payment. Compare N.J.S.A. 12A:3-122(2), which states that "[a] cause of action against the obligor of a demand or time certificate of deposit accrues upon demand...." As explained by Uniform Commercial Code Comment 1 on N.J.S.A. 12A:3-122
An exception [to the rule that the cause accrues on a demand note on the date of issue] is made in the case of certificates of deposit for the reason that banking custom and expectation is that demand will be made before any liability is incurred by the bank, and the additional reason that such certificates are issued with the understanding that they will be held for a considerable length of time, which in many instances exceeds the period of the statute of limitations.
And as further amplified by New Jersey Study Comment 1:
The certificate of deposit is a negotiable instrument, usually taking the form of a demand note, issued by a bank to a depositor upon receipt of his deposit. While *496 these instruments are in the form of a demand note, they resemble a pass book, and depositors inveterately think of them as mere receipts for money deposited in a savings account. Of course, a demand and refusal are conditions precedent to the right of a depositor to sue a bank upon a deposit account, and consequently, the statute of limitations does not start to run against a depositor until a demand has been made by him. Theoretically, however, the certificate of deposit is different. It is a demand note, and the statute of limitations starts to run the moment it is issued. Where this theory has been put into practice, it has had the unfortunate effect of barring a depositor's rights to his "savings account" simply because he did not withdraw it within six years. Nothing in the N.I.L. [Negotiable Instruments Law] dictates a contrary result.
Consequently, the statute of limitations did not start to run until plaintiff's demand for payment was made and refused. Her action was commenced shortly thereafter. There is consequently no bar to this action in limitations law.
The primary issue is, rather, defendant's claim of entitlement to a presumption of payment. To begin with, it is clear that the relationship between the depositor and bank is that of creditor and debtor and that the passbook constitutes both the instrument of obligation and prima facie evidence thereof. See, e.g., Bruno v. Collective Fed. Sav. and Loan Ass'n, 147 N.J. Super. 115, 121, 370 A.2d 874 (App.Div. 1977); Forbes v. First Camden Nat'l Bank & Trust Co., 25 N.J. Super. 17, 21, 95 A.2d 416 (App.Div. 1953). It is also well-settled that the creditor's possession of an uncancelled instrument of obligation shifts the burden of going forward as well as the burden of persuasion to the debtor to prove the affirmative defense of payment. See, e.g., Guerin v. Cassidy, 38 N.J. Super. 454, 460, 119 A.2d 780 (App.Div. 1955); Kushinsky v. Samuelson, 142 N.J. Eq. 729, 731, 61 A.2d 287 (E. & A. 1948); Conlon v. Hornstra, 82 N.J.L. 355, 357, 83 A. 183 (Sup.Ct. 1912). Clearly then, it was the bank's burden to prove that it had paid the proceeds of the account to Mrs. Guarino. The bank was unable to produce any documentary proof of payment or circumstantial proof from which the fact of payment could have been inferred. It therefore sought to rely on the asserted common-law principle that a lapse of twenty years from the date of accrual of the debt raises a rebuttable presumption of its payment. We are satisfied that despite whatever viability such a presumption may have, it *497 does not apply to savings accounts and hence that the judge correctly rejected it.
We note at the outset that this jurisdiction, from earliest times, has recognized a rebuttable common-law presumption of payment based on the lapse of twenty years. See, e.g., Ex'rs of Wanmaker v. Van Buskirk, 1 N.J. Eq. 685, 692 (Ch. 1832); Mease, Executor of Hease v. Stevens, 1 N.J.L. 495 (Nisi Prius 1793). Nevertheless, insofar as we have been able to determine, that presumption, with a few exceptions going back to the last century,[2] has been applied only to debts secured by mortgage. Moreover, as we read the cases dealing with the presumption in those transactions, it is not the common-law presumption, although acknowledged, that is ordinarily the ratio decidendi for the preclusion of the creditor's claim, but rather the limitations provision of N.J.S.A. 2A:14-6 and its predecessor R.S. 2:24-12, which bars entry into real estate twenty years after the right or title of entry accrues. See, e.g., Lake Waterloo Corp. v. Kestenbaum, 10 N.J. 525, 92 A.2d 478 (1952); Wilson v. Stevens, 105 N.J. Eq. 377, 148 A. 392 (Ch. 1929). See also Ryan v. Estes, 105 N.J.L. 201, 143 A. 431 (E. & A. 1928). In sum, then, there appears to be no New Jersey case in which the presumption was either asserted in or applied to a commercial transaction in general or to a depositor's claim against the bank in particular, a fact probably attributable to the applicability in most instances of a limitations period less than the twenty years on which the presumption is based.
*498 We are aware that at least nine other states have considered the issue now before us and have concluded that while it may be circumstantially overcome, the common-law presumption is nevertheless applicable to a bank account. See Owens v. Bank of Brewton, 53 Ala.App. 529, 302 So.2d 114 (1974); Hicks v. Exchange Bank & Trust Co., 252 Ark. 61, 478 S.W.2d 54 (1972); In re Estate of Fantozzi, 183 Ill. App.3d 732, 132 Ill.Dec. 30, 539 N.E.2d 340 (Ct. 1989); Long v. Straus, 124 Ind. 84, 24 N.E. 664 (1890); Morse v. National Cent. Bank, 150 Md. 142, 132 A. 598 (1926); Boscowitz v. Chase Nat'l Bank, 202 Misc. 1016, 111 N.Y.S.2d 147 (1952); Second Nat'l Bank v. Thompson, 44 Pa.Super. 200 (Dis.Ct. 1910); Commerce Union Bank v. Horton, 225 Tenn. 679, 475 S.W.2d 660 (1972); Blackstone v. First Nat'l Bank of Cody, 64 Wyo. 318, 192 P.2d 411 (1948). And see Dag E. Ytreberg, Annotation, Presumption of Payment As Applicable to Bank Deposit, 69 A.L.R.3d 1311 (1976) and later case service. Since we disagree with those out-of-state holdings that are based on apposite factual patterns, we decline to follow their lead.
First, we are satisfied that application of the common-law presumption in this state has always been conditioned upon the existence of circumstances that fail, prima facie, to explain, justify or provide good cause for the creditor's delay in making demand. See, e.g., Peacock v. Ex'rs of Newbold, 5 N.J. Eq. 535 (E. & A. 1845). That condition is not present here. We are of the view that the depositor of funds into a bank savings account is ordinarily entitled to believe, and does in fact expect, that the deposit is entirely safe, that the funds will be indefinitely available, and that no demand need be made and no action need be taken to protect the right to obtain those funds at any time the passbook is presented. See the New Jersey Study Comment quoted supra. We do not believe that ordinary savings account depositors are chargeable with knowledge of the escheat statute presumption of abandonment ten years after activity in the account has ceased. See N.J.S.A. 2A:37-30(b)(1). Consequently, the failure of a depositor to demand payment for an extended period of time is perfectly *499 consistent with the depositor's understanding of what a passbook savings account is all about. It is therefore not a failure supporting a presumption that payment has not been sooner demanded for the reason that the debt has already been paid.
We are also of the view that at least in respect of passbook accounts, the bank can easily assure itself of the means of proving payment. As we have pointed out, the proofs here offered by defendant were that funds can be withdrawn from a passbook account in only one of two ways: by presentation of the passbook, which is then properly stamped or marked by the teller, or by execution of a lost-passbook affidavit. All the bank need do is retain either the original affidavit, a microfilm of the affidavit, or even a list of affidavits on the basis of which funds have been paid. One would assume, moreover, consistent with the usual course of human experience, that lost objects may reasonably be anticipated one day to be found. Thus one would also assume that in its own interest, banks would resort to the simple expedient of long-term retention of some sort of lost-passbook affidavit record without regard to any more permissive governmental regulation or internal policy. In short, we are persuaded that there is nothing unusual about the discovery of an uncancelled passbook among the personal effects of a decedent nor anything unusual about the heir expecting it to be honored by the bank which received and has apparently not repaid the funds shown to be on deposit. We thus conclude that from the perspective of both the bank and the depositor, the essential nature of a passbook savings account is itself a circumstance contradicting the empirical assumptions on which the presumption of payment is based in the first instance.
We also conclude that there is nothing in regulatory retention periods that affords the bank a defense to this claim. Those periods are indeed just that  regulatory. They do not affect the direct relationship between bank and depositor nor define their obligations to each other. Nor were they intended to. Indeed the enabling legislation for the federal adoption of retention periods expressly describes the regulatory purpose as based *500 on the determination by the Secretary of the Treasury "that the maintenance of appropriate types of records and other evidence ... has a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings...." 12 U.S.C.A. § 1829b(b)(1). We thus regard the proofs respecting the retention periods and the questions with respect thereto raised on appeal by defendant as essentially irrelevant.
In sum, plaintiff proved a debtor-creditor relationship between her decedent and the bank. The burden shifted to the bank to prove its affirmative defense of payment. Under the circumstances, the bank was not entitled to satisfy its consequent burden of going forward by way of a presumption of payment. Nor did it adduce any other proofs rebutting plaintiff's prima facie case. Plaintiff was entitled to judgment.
We also think it plain that plaintiff was entitled to interest at bank rates from the date of the deposit. Obviously, the passbook account represented a contract between the bank and the depositor. See Forbes v. First Camden Nat'l Bank & Trust Co., supra, 25 N.J. Super. at 21, 95 A.2d 416. One of the terms of that contract was the payment by the bank of periodic interest at its prevailing rates. There is no question that on the bank's breach of the contractual obligation of payment, interest as provided by the contract was recoverable. See, e.g., Jacobs v. Great Pacific Century Corp., 204 N.J. Super. 605 (App.Div. 1985), aff'd, 104 N.J. 580, 518 A.2d 223 (1986).
The judgment appealed from is affirmed.
NOTES
[1] Intriguingly, there was also testimony by a UJB employee that in 1983, the bank converted all its passbook accounts to statement accounts. The subject was not pursued either in direct or cross-examination, and there was no evidence presented as to whether existing passbook accounts were so converted and, if so, if passbook depositors were then required to surrender their books or execute a lost-book affidavit. During its deliberations, the jury asked "at changeover from passbooks to statements did customers have to return the old passbook for cancellation?" The judge correctly responded that that information was not in evidence and could not then be supplied.
[2] In Peacock v. Black, 5 N.J. Eq. 535 (E. & A. 1845), the presumption was applied to bar the claim of a legatee made 31 years after the testator's death, 24 years after settlement of the estate, and 17 years after the executor's death where no good cause was shown for the delay. Evidently, in modern terms, the claim would have been barred by the doctrine of laches if no statute of limitations were applicable. Compare Betts v. Van Dyke, 40 N.J. Eq. 149 (Ch. 1885), in which the court refused to apply the presumption to bar payment of a late claim by a legatee for the balance of the legacy. See also Mathews v. Kelly, 70 N.J. Eq. 796, 67 A. 1075 (E. & A. 1906), applying the presumption in the absence of any evidence to the contrary to a guardian's disposition of his ward's funds where twenty years have passed from the date of the final accounting.