**ST. LOUIS BANK FOR SAVINGS, FSB, a United States corporation, Appellant,**

v.

**AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, a Pennsylvania corporation, Appellee.**

**No. 90–5208.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 14, 1990.

Decided March 11, 1991.

---

Joseph J. Roby, Jr., Duluth, Minn., for appellant.

Thomas Crouch, Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, JOHN R. GIBSON and WOLLMAN, Circuit Judges.

WOLLMAN, Circuit Judge.

St. Louis Bank for Savings appeals from the district court's [1] denial of summary judgment for St. Louis Bank and its grant of summary judgment for American Casualty Company. We agree with the district court that St. Louis Bank's loss was excluded from insurance coverage, and we therefore affirm.

## I.

St. Louis Bank wholly owned and controlled a subsidiary, Tri–State Service Corporation, that in turn wholly owned and controlled another subsidiary, T–S Development Corporation. James Schwebel entered into a limited partnership with T–S Development that was created to purchase and operate an apartment complex. Schwebel contributed exclusively money (more than $800,000 over several years), while T–S Development managed and operated the apartment complex.

The limited partnership agreement that was initially proposed to Schwebel required T–S Development to pay operating costs that exceeded operating revenue, which would be considered loans to the limited partnership. Under the original scheme, T–S Development's loans for operating costs would be repaid only after Schwebel's investment was returned. Mark Melhus, an officer of Tri–State and T–S Development, switched the priority provision in the limited partnership agreement without advising Schwebel so that T–S Development's loans would be repaid first and Schwebel's investment second.

Schwebel sued Melhus, St. Louis Bank, Tri–State, and T–S Development, alleging fraud, misrepresentation, and securities violations stemming from Melhus' undisclosed alteration of the limited partnership agreement. After transfer to private arbitration for resolution, a panel awarded Schwebel more than 1.3 million dollars against St. Louis Bank, Tri–State, T–S Development, and Melhus, jointly and severally. St. Louis Bank indemnified Melhus and

1. The Honorable Robert G. Renner, United States District Judge for the District of Minnesota.

paid Schwebel, then sought indemnification from American Casualty under its directors' and officers' liability insurance policy. American Casualty refused to indemnify St. Louis Bank on the basis of the exclusion contained in Endorsement 21 of St. Louis Bank's policy.

Under the directors' and officers' liability insurance policy in question, American Casualty agreed

(a) [w]ith the Directors and Officers of [St. Louis Bank] that if, during the policy period, any claim or claims are made against the Directors and Officers, individually or collectively, for a Wrongful Act, the Insurer will pay, in accordance with the terms of this policy, on behalf of the Directors and Officers or any of them, their heirs, legal representatives or assigns all Loss which the Directors and Officers or any of them shall become legally obligated to pay.

(b) [w]ith [St. Louis Bank] that if, during the policy period, any claim or claims are made against the Directors and Officers, individually or collectively, for a Wrongful Act, the insurer will pay, in accordance with the terms of this policy, on behalf of [St. Louis Bank], all Loss for which [St. Louis Bank] is required to indemnify or for which [St. Louis Bank] has, to the extent permitted by law, indemnified the Directors and Officers.

Endorsement 21 of the policy provides that:

It is understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any claim made against the Insured (as defined in the Policy) based upon or attributable to *any interests or investments of [St. Louis Bank], as defined in Section 1(a) of the policy in any joint venture, or limited partnership, or any loans provided by [St. Louis Bank] to any joint venture or limited partnership in which it has interests or investments.*

The emphasized portion of the endorsement represents words typed on the pre-printed insurance form.

The district court found Endorsement 21 to be unambiguous and held that it excluded coverage of St. Louis Bank's claim for indemnity.

## II.

St. Louis Bank challenges the validity of the endorsement on several grounds.

■ St. Louis Bank contends that Endorsement 21 is unenforceable for lack of consideration because the premium was not reduced in exchange for the exclusion, relying on *Southern Farm Bureau Casualty Ins. Co. v. United States*, 395 F.2d 176, 180 (8th Cir.1968). We read *Southern Farm Bureau* as requiring consideration to support the modification of an insurance policy during the policy period. As we recognized in *Southern Farm Bureau*, however, an insurance company can offer a new or altered contract to the insured at the expiration of the policy period, which the insured is free to accept or reject. Here, American Casualty notified St. Louis Bank that the renewed policy including Endorsement 21 would bring about a substantial reduction in insurance coverage. The consideration exchanged for St. Louis Bank's willingness to accept the policy with Endorsement 21 was American Casualty's willingness to renew the insurance. We agree with the district court that given the fact that the policy was not an automatic renewal and was issued on the basis of a new quotation by American Casualty, adequate consideration supported the policy, including Endorsement 21.

■ St. Louis Bank next argues that Endorsement 21 is ambiguous in describing which insureds are excluded. St. Louis Bank argues that the term "Insured" could mean directors, officers, St. Louis Bank, its subsidiaries, or any combination of those entities. St. Louis Bank concludes that because the term "Insured" refers to more than one entity, it is an ambiguous term that renders the entire endorsement incapable of definition and therefore meaningless and unenforceable. We disagree.

The insureds are those entities whom American Casualty agreed to insure—namely, the directors and officers of St. Louis Bank and St. Louis Bank itself. We

agree with the district court that the term "Insured" is not rendered ambiguous just because there is more than one insured under the policy. Under Minnesota law, a reviewing court may not read an ambiguity into the plain language of an insurance contract. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989); *Henning Nelson Constr. Co. v. Fireman's Fund American Life Ins. Co.*, 383 N.W.2d 645, 652 (Minn.1986). Accordingly, the district court did not err in finding the language of Endorsement 21 to be unambiguous.

Finally, St. Louis Bank argues that Endorsement 21 reaches only "business risks." Once more confronted with its plain language, we can not read a restriction to "business risks" into the simple words of Endorsement 21. The parties contracted for insurance coverage that excluded, very plainly, *any* claim based on St. Louis Bank's investment in a limited partnership or *any* claim based on St. Louis Bank's loans to a limited partnership in which it had an investment.

The district court's judgment is affirmed.