Bob **SLAUGHTER, Preston Grace, Jr., Howard Tripp, R.E. Bell, James D. Hill, Howard House, E.J. Massey, John Freeman, Jeffery Hance and the Resolution Trust Corporation, Plaintiffs,**

v.

**AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, Defendant.**

Civ. No. B–C–92–23.

United States District Court, E.D. Arkansas, N.D.

March 29, 1993.

John M. Belew, Batesville, AR, Richard T. Donovan, and Patricia J. Heritage, Rose Law Firm, H. William Allen, Allen Law Firm, Little Rock, AR, Carolyn A. Arthur, Resolution Trust Corp., Legal Div., Overland Park, KS, for plaintiffs.

Jim L. Julian, Chisenhall, Nestrud & Julian, P.A., Little Rock, AR, Michael P. Tone, and Anne Fiedlet, Peterson & Ross, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

GEORGE HOWARD, Jr., District Judge.

The individual plaintiffs are former directors and officers of Independence Federal Bank of Batesville, Arkansas ("Independence"). On February 17, 1989, the Federal Home Loan Bank Board ("FHLBB") declared Independence insolvent pursuant to Section 5(d) of the Home Owners Loan Act of 1933, as amended ("HOLA"). Pursuant to Section 5(d)(2)(A) of HOLA, the FHLBB appointed the Federal Savings & Loan Insurance Corporation ("FSLIC") as Conservator of Independence to administer Independence's assets and affairs. Effective August 9, 1989, and pursuant to § 401(a)(1) of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1437 note, the Resolution Trust Corporation ("RTC") become Conservator for Independence and was granted authority to manage and resolve Independence. On September 7, 1990, the RTC was appointed Receiver of Independence to replace RTC as Conservator. The RTC brought an action in its capacity as Receiver against the former directors and officers based on allegation of mismanagement and breach of fiduciary duty. That action was docketed as *Resolution Trust Corporation v. Grace*, B–C–92–009, and is currently pending before the Court ("RTC action").

The RTC and the individual plaintiffs then filed this action seeking a declaratory judgment that they are entitled to coverage under a directors and officers ("D & O") insurance policy they purchased from defendant, American Casualty Company of Reading, Pennsylvania ("ACCO") for claims brought against them by the RTC in the RTC action.

The parties have filed cross motions for summary judgment. ACCO contends that it is not obligated to provide coverage to plaintiffs based on: (1) a regulatory exclusion; (2) the "Insured v. Insured" exclusion; and (3) plaintiffs' failure to comply with the policy terms regarding notice of the claims. Plaintiffs assert that they provided adequate notice of potential claims, that the regulatory exclusion does not apply to the RTC, and that the "Insured v. Insured" exclusion does not operate to preclude coverage for the RTC's claims.

The undisputed facts reveal that ACCO issued a directors and officers liability policy no. 800643005(05160) ("Policy") to Independence with an effective policy period of July 20, 1986 to July 20, 1987. The policy contained a $3 million limit of liability. Independence paid a premium of $64,584 for the policy.

On May 7, 1987, ACCO mailed a written notice to Independence stating that the policy would not be renewed because the financial performance of Independence did not meet ACCO's underwriting guidelines. The policy contained a discovery clause permitting the insured to purchase an extension of the coverage under the policy in the event the insurer either cancelled or refused to renew the policy. On July 10, 1987, Independence submitted to ACCO a request to purchase the additional discovery period of ninety days and enclosed payment in the amount of $16,146.00.

On October 15, 1987, three days prior to the expiration of the discovery period, Jeffrey E. Hance, Senior Vice President of Independence, issued a letter to ACCO advising ACCO of certain occurrences at Independence which might subsequently give rise to a claim being filed against the directors and officers based on a wrongful act as that term is defined in the policy. ACCO has taken the position that Mr. Hance's letter was insufficient notice to invoke coverage under the policy.

■ ACCO first argues that coverage is barred by the Regulatory Exclusion. The policy contained Endorsement No. 6, which provided the following "Limitation of Coverage:"

It is understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any claim made against the Directors of [sic] Officers based upon or attributable to:

any action or proceeding brought by or on behalf of the Federal Deposit Insurance Corporation, the Federal Savings & Loan Insurance Corporation, any other depository insurance organization, the Comptroller of the Currency, the Federal Home Loan Bank Board, or any other national or state regulatory agency (all of said organizations and agencies hereinafter referred to as "Agencies"), including any type of legal action which such Agencies have the legal right to bring as receiver, conservator, liquidator or otherwise; whether such action or proceeding is brought in the name of such Agencies or by or on behalf of such

Agencies in the name of any other entity or solely in the name of any Third Party.

This clause, known as the regulatory exclusion, has been the subject of much litigation. The overwhelming majority of courts have upheld its validity in cases involving the FDIC. *See e.g. Federal Deposit Ins. Corp. v. American Casualty Co.,* 975 F.2d 677 (10th Cir.1992); *Fidelity & Deposit Co. v. Conner,* 973 F.2d 1236 (5th Cir.1992); *St. Paul Fire and Marine Ins. Co. v. Federal Deposit Ins. Corp.,* 968 F.2d 695 (8th Cir.1992); *American Casualty Co. v. Federal Deposit Ins. Corp.,* 944 F.2d 455 (8th Cir.1991).

Plaintiffs argue that those cases are inapposite. Here, the action is brought by the RTC, not specifically listed in the exclusion. Plaintiffs contend that the RTC is not a regulatory agency, that the language in the clause is ambiguous and therefore must be construed against ACCO. *See Norton v. St. Paul Fire and Marine Ins. Co.,* 902 F.2d 1355, 1357 (8th Cir.1990) (Under Arkansas law, intent to exclude coverage must be expressed in clear and unambiguous language; ambiguity in exclusionary clause must be construed strictly against insurer and all reasonable doubts in interpretation must be resolved in favor of insured).

The Court need not decide the issue of whether the action by the RTC would be barred by the regulatory exclusion. The Court finds, as discussed below, that the exclusion is void for want of consideration.

The record reveals that the policy ACCO issued to plaintiffs in 1984–85 did not contain the regulatory exclusion. Plaintiffs paid a premium of $6,377 for the coverage. In 1985, ACCO renewed Independence's D & O policy, added the regulatory exclusion and increased the premium from $6,377 to $15,934. ACCO again renewed the D & O policy in 1986. The 1986–87 policy contained the regulatory exclusion, and the premium was increased to $64,584.

Plaintiffs contend that no consideration was given for the inclusion of the regulatory exclusion. The substantive law of Arkansas applies with regard to this issue.

■ A limiting endorsement to an existing contract of insurance must be supported by consideration. *Southern Farm Bureau Casualty Ins. Co. v. United States,* 395 F.2d 176, 180 (8th Cir.1968); *Wold v. Life Insurance Co. of Arkansas,* 24 Ark.App. 113, 115, 749 S.W.2d 346 (1988). Here, ACCO neither reduced the premium in exchange for the more limited coverage, nor notified plaintiffs in writing of its intent to cancel. An "insurer's intent to cancel must be communicated in order for forbearance from exercising a right of cancellation to provide consideration for a limiting endorsement." 24 Ark.App. at 115, 749 S.W.2d 346 (1988).

The Court finds *Southern Farm* controlling. In that case, as here, the policy sought to limit coverage. The court found not only the initial policy containing the limiting endorsement to be void for want of consideration but all subsequent renewals to be void. 395 F.2d at 181.

The Court recognizes that the result may seem somewhat harsh to ACCO. However, as Judge Gibson explained in *Southern Farm:*

> The insurance company clearly could cancel the policy upon proper notice and could if desired offer a different policy to the assured, who would be free to accept or reject the proffered policy; or the company could refuse to renew except upon altered terms and conditions. The company is not locked in for an extended period of time or *ad infinitum* so to speak in its contract obligations if proper steps are taken to make a new or altered contract with its assured.

*Id.*

ACCO issued a renewal policy. Such policy is, unless otherwise expressed, on the same terms and conditions as were contained in the original policy. *Id.*

Thus, the Court finds that the regulatory exclusion was void when included in the 1985–86 policy and remained void on subsequent renewals.

■ ACCO next contends that the "Insured v. Insured" exclusion precludes coverage for the RTC's claims. This exclusion is contained in Endorsement No. 11 and provides as follows:

> It is understood and agreed that the Insurer shall not be liable to make any payment for Loss, as defined in Clause 1(d) hereof, which is based upon or attributable to any claim made against any Director or Officer by any other Director or Officer or by the Institution defined in Clause 1(a) of the Policy (hereinafter called "Institution"), except for a shareholders derivative action brought by a shareholder of the Institution other than an Insured.

The Court need not dwell on this argument for long. A number of courts have had the opportunity to construe the same provision, and the overwhelming majority have found that it does not preclude coverage for claims asserted by the FDIC or FSLIC. *See e.g., Federal Deposit Ins. Corp. v. Zaborac,* 773 F.Supp. 137 (C.D.Ill.1991); *Fidelity and Deposit Co. of Md. v. Zandstra,* 756 F.Supp. 429 (N.D.Cal.1990); *American Casualty Co. v. FSLIC,* 704 F.Supp. 898 (E.D.Ark.1989).

As with the FDIC and the FSLIC, the RTC does not stand in the shoes of a failed institution. As the court in *American Casualty v. Baker,* 758 F.Supp. 1340 (C.D.Cal. 1991), noted, the insured v. insured exclusion is to protect the insurer against collusive suits between the failed institution and its directors and officers. It does not apply to a suit brought by the RTC because the RTC is a genuinely adverse party to the defendant officers and directors. Furthermore, the RTC is authorized to bring suit as a creditor itself, on behalf of the creditors and shareholders of the institution, and as subrogee to the rights of the depositors.

Thus, the "Insured v. Insured" exclusion in this case does not preclude coverage for the RTC's claims.

■ Finally, ACCO argues that plaintiffs failed to make a claim during the policy period as required. On May 7, 1987, ACCO issued to Independence notice that ACCO would not renew the D & O policy because the financial performance did not meet underwriting guidelines. Independence exercised its right under the policy to purchase an extended discovery period for a period of

ninety days. Independence paid a premium of $16,146.00 for the discovery clause coverage. The interpretation of that coverage is in dispute.

Various provisions of the policy must be analyzed. Clause 2 of the policy states:

(a) Coverage Clause—This policy shall cover Loss in respect to any Wrongful Act committed prior to the termination of this policy arising out of any claim made (i) within the policy period or (ii) within the discovery period if the right is exercised by the Association in accordance with Clause 2(b). For purposes of this Clause 2(a), any claim made subsequent to the policy period as to which notice was given to the insurer within the policy period as provided in Clause 6(a) or 6(b) shall be treated as a claim made during the policy period.

(b) Discovery Clause—If the insurer shall cancel or refuse to renew this policy, the Association shall have the right, upon payment of twenty-five percent (25%) of the annual premium or ten percent (10%) of the three year prepaid premium set forth in Item 5 of the Declarations, to an extension of the coverage granted by this policy with respect to any claim or claims which shall be made against the directors or officers during the period of ninety (90) days after the date of such cancellation or refusal to renew, only with respect to any Wrongful Act committed before the date of such cancellation or nonrenewal. A written request for this extension, together with payment of the appropriate premium, must be made within ten (10) days after the effective date of cancellation or non-renewal of the policy.

Clause 6(a) of the policy provides:

If during the policy period the Association or the Directors or Officers shall: (i) receive written or oral notice from any party that it is the intention of such party to hold the Directors and Officers, or any of them, responsible for a Wrongful Act; (ii) become aware of any occurrence which may subsequently give rise to a claim being made against the Directors and Officers, or any of them, for a Wrongful Act; and shall, during such period, given written

notice thereof to the Insurer as soon as practicable and prior to the date of termination of the policy, then any claim which may subsequently be made against the Directors or Officers arising out of such Wrongful Act shall, for the purpose of this policy, be treated as a claim made during the policy year in which such notice is given.

The interpretation of the policy is further complicated by the language of Endorsement No. 17 which provides:

Clause 4(b) of the Policy is amended to read as follows:

The limit of liability of the insurer shall be the amount stated in Item 3 of the Declarations, which amount shall be the maximum aggregate liability of the insurer with respect to claims made in each Policy Year. The last Policy Year shall include the extension of coverage granted under Clause 2(b). For purposes of this Clause 4(b), a claim shall be deemed to be made at the date that notice is given to the insurer pursuant to Clause 6(a) or 6(b), or at the date a suit is brought against the Directors and Officers, whichever shall occur first.

ACCO argues that the October 15, 1987, letter from Independence does not constitute a claim under the policy. It contends that an insured may give notice of potential claims or actual claims to obtain coverage during the policy period, but that the notice of an actual claim is required for coverage during the discovery period. Here, plaintiffs did not give notice of any actual claim during the discovery period; their letter to ACCO advised ACCO of potential claims. ACCO further asserts that the October 15, 1987 letter lacked sufficient detail and specificity to be regarded as notice of a potential claim.

Plaintiffs argue that they understood the policy to allow notice of either a claim or notice of a potential claim during the discovery period.

Two courts of appeals have addressed very similar policy language with differing results. In *American Casualty v. FDIC*, 958 F.2d 324 (10th Cir.1992) (*Wilkinson*), the court held that notice of an occurrence or potential claim given during the discovery period did

not trigger coverage under the policy. The Eighth Circuit, in *McCuen v. American Casualty Co.*, 946 F.2d 1401 (8th Cir.1991) held otherwise.

 The Court agrees with the reasoning in *McCuen.* The Court is persuaded that the policy provisions regarding the type of claims covered and the type of notice those claims must be given are ambiguous. Under Arkansas law, the Court must construe the ambiguities against the insurer and in favor of the insured. *Baskette v. Union Life Ins. Co.*, 9 Ark.App. 34, 36, 652 S.W.2d 635 (1983). "If the language in the policy is ambiguous, or there is any doubt or uncertainty as to its meaning and it is fairly susceptible of two or more interpretations, one favorable to the insured and the other favorable to the insurer, the one favorable to the insured will be adopted." *Pizza Hut v. West General Ins. Co.*, 36 Ark.App. 16, 18, 816 S.W.2d 638 (1991).

Here, plaintiff's understanding that when they purchased the discovery period coverage they were obtaining an extension of the same coverage they had previously is entirely reasonable. They had paid one-fourth of a yearly premium for coverage for 3 months, or one-fourth of a year. It would not seem reasonable to pay such a large premium for the substantially reduced coverage ACCO says plaintiffs purchased.[1] Even the language of Endorsement No. 17 which makes reference to "extension of coverage" under the discovery period supports plaintiffs' interpretation. That plaintiffs' understanding is reasonable, however, does not resolve the ambiguities in the contract.

 The initial determination of the existence of an ambiguity rests with the Court. If an ambiguity exists, then parole evidence is admissible and the meaning of the ambiguous term becomes a question for the fact finder. 36 Ark.App. at 20, 816 S.W.2d 638. The parties have submitted extensive documentation but given the ambiguity of the contract, and the conflicting evidence the

Court cannot say what the parties meant as a matter of law. The intention of the parties and the interpretation of the ambiguities must be left to the fact finder to resolve. Thus, the Court finds that summary judgment is not appropriate with regard to whether notice of potential claims during the discovery period was covered under the policy.

The Court is also persuaded that genuine issues of material fact exist as to whether the notice given was adequate or sufficient.

Accordingly, the motions for summary judgment are denied. The case will be reset for trial under separate scheduling order. The motion for leave to amend the answer is granted.

IT IS SO ORDERED.

---

1. In this regard the plaintiffs' interpretation of the policy is even more reasonable than that in *McCuen* or *Wilkinson.* In both those cases, the associations paid seventy-five percent of a yearly premium for a year of discovery period coverage. Arguably then, the insurer could argue that the insured should have expected less coverage as the premium was less than what the insured would have had to pay for full coverage.