Bob SLAUGHTER; Preston Grace, Jr.; Howard Tripp; R.E. Bell; James D. Hill; Howard House; E.J. Massey; John Freeman; Jeffrey Hance; Resolution Trust Corporation, Appellees,

v.

AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, Appellant.

No. 94–1152.

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1994.

Decided Oct. 3, 1994.

Michael P. Tone, Chicago, IL, argued (Jim L. Julian and Janie W. McFarlin, Little Rock, AK, on the brief), for appellant.

Wendi Sloane Weitman, Chicago, IL, argued (John M. Belew, Batesville, AK, H. William Allen, Little Rock, AK, B.J. Hickert, Overland Park, KS, and Richard T. Donovan and Patricia J. Heritage, Little Rock, AK, on the brief), for appellees.

Before MORRIS SHEPPARD ARNOLD, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and MICHAEL J. MELLOY,* Chief District Judge.

JOHN R. GIBSON, Senior Circuit Judge.

American Casualty Company of Reading, Pennsylvania, appeals from a declaratory judgment entered in favor of the Resolution Trust Corporation and the former directors and officers of the Independence Federal Bank of Batesville, Arkansas. The order declared that an officers' and directors' insurance policy issued by American Casualty provided coverage to the officers and directors, and that the regulatory exclusion included in the policy was void for want of consideration. American Casualty argues that the regulatory exclusion was valid and excluded coverage of the officers and directors. We reverse and order that judgment be entered in favor of American Casualty.

The officers and directors of the bank[1] obtained a directors' and officers' policy from American Casualty for the 1984–85 policy year. The 1984–85 policy did not contain a regulatory exclusion. On July 23, 1985, be-

---

* The HONORABLE MICHAEL J. MELLOY, Chief United States District Judge for the Northern District of Iowa, sitting by designation.

1. Bob Slaughter, Preston Grace, Jr., Howard Tripp, R.E. Bell, James D. Hill, Howard House, E.J. Massey, John Freeman and Jeffrey Hance.

fore the 1984–85 policy expired, American Casualty issued to the bank a quotation for renewal of the policy.[2] In the quotation, American Casualty agreed to issue the directors' and officers' liability policy "subject to the terms and conditions contained herein." The quotation listed numerous endorsements, including a limitation of coverage endorsement with the abbreviation "Reg." written in hand beside it. To effect coverage, American Casualty required that either the chairman of the board or the bank's chief executive sign the quotation and return it to American Casualty's underwriting department. The quotation was signed by Preston Grace Jr., the chairman of the board, dated August 6, 1985, and returned to American Casualty. On September 3, 1985, American Casualty issued the bank the 1985–86 policy. The regulatory exclusion was included in the policy.

Similarly, on June 30, 1986, American Casualty issued another quotation for renewal of insurance to the bank which contained similar terms and endorsements. Again, the quotation listed the limitation of coverage endorsement (endorsement # G–11187–A) with the notation "Reg." written in hand beside it. The quotation was signed by Preston Grace and dated July 2, 1986. American Casualty issued the policy on August 13, 1986 and again the policy contained the regulatory exclusion.[3] The policy covered the period between July 20, 1986 and July 20, 1987. It was under this policy that the claim now before us arose.

On May 7, 1987, American Casualty issued notice to the bank that it would not renew the policy on expiration because the financial performance of the bank did not meet American Casualty's underwriting guidelines. American Casualty informed the bank of its right to buy extended coverage for an additional ninety days, which would provide coverage for actual claims made against directors and officers during the extended discovery period, but arising out of wrongful acts occurring before the expiration of the original policy. On July 10, 1987, the bank purchased this coverage effective ninety days from July 20, 1987, and paid the required premium. On October 15, 1987, three days before expiration of the extended discovery period, the Senior Vice President of the bank issued a letter to American Casualty informing American Casualty that the directors and officers of the bank were aware of certain losses suffered by the bank which could give rise to a claim against them.

In February 1992, the RTC filed a complaint against certain directors and officers for alleged mismanagement of the bank which led to the bank's failure. After the RTC action was commenced, the officers and directors joined the RTC in seeking defense and indemnity from American Casualty with respect to the RTC's claims. American Casualty denied coverage on the basis of the regulatory exclusion, the insured versus insured exclusion, and improper and untimely notice.

The officers, directors and RTC then brought this action against American Casualty. The district court, on cross motions for summary judgment, held that the regulatory exclusion was void for want of consideration and that the insured versus insured exclusion did not bar coverage.

However, the district court ruled that there were genuine issues of material fact with respect to whether the policy provided coverage for potential claims which the bank notified American Casualty of during the extended discovery period, and whether the bank gave American Casualty sufficient notice of the claims. Thus, the district court denied the motion for summary judgment in

---

2. Before issuing a quotation for the renewal of a policy, American Casualty's usual procedure was to require the insured to file an application for renewal. The application for renewal required the insured to provide American Casualty with detailed information which American Casualty used to assess the risk posed, and on which it based the premium.

3. The regulatory exclusion in 1986–87 and the other policies states:

   any action or proceeding brought by or on behalf of the Federal Deposit Insurance Corporation, the Federal Savings & Loan Insurance Corporation, any other depository insurance organization, the Comptroller of the Currency, the Federal Home Loan Bank Board, or any other national or state regulatory agency.

an order dated March 29, 1993, 842 F.Supp. 371.

The parties then resubmitted the case stipulating that the court had before it all the evidence necessary to resolve the two remaining factual issues without trial. On December 22, 1993, the district court held that the policy provided coverage for potential claims, notice of which was provided during the extended discovery period, rather than the actual policy period, 842 F.Supp. 376. It further found that the officers and directors gave American Casualty sufficient notice.

■ · American Casualty appeals, arguing that the district court erred in rejecting each of its four defenses.

The district court's decision that the regulatory endorsement was not supported by sufficient consideration rests on Arkansas law. We review district court determinations of state law de novo, giving their decisions no deference. *Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991). As we conclude that the issues relating to the validity of the regulatory exclusion are determinative in this case, it will be unnecessary to reach any other issues raised by the parties.

■ The district court held that the regulatory exclusion added to the policy in the 1985 renewal was void for lack of consideration, and remained void during the succeeding policy periods, basing its decision on *Southern Farm Bureau Casualty Ins. Co. v. United States,* 395 F.2d 176, 180–81 (8th Cir.1968), and *Wold v. Life Ins. Co. of Arkansas,* 24 Ark.App. 113, 749 S.W.2d 346 (1988).

American Casualty argues that the district court erred in so ruling, as *Southern Farm Bureau* and *Wold* both involved policy exclusions issued during the policy period, and that the holdings are limited to such circumstances. It is evident that *Southern Farm Bureau,* a case in which this court held that a regulatory exclusion was void for want of consideration, is so limited. *Southern Farm Bureau,* 395 F.2d at 181. There the liability policy was issued for a six month period. *Id.* at 177. An endorsement was issued by Southern and delivered to the insured which

retroactively excluded the United States of America from any coverage on the policy. *Id.* This court made clear in its opinion written by Judge Floyd R. Gibson that the holding was limited to situations where an insurance company attempts to modify a policy during a policy period. *Id.* at 181; *see also Wackerle v. Pacific Employers Ins. Co.,* 219 F.2d 1 (8th Cir.), *cert. denied,* 349 U.S. 955, 75 S.Ct. 884, 99 L.Ed. 1279 (1955). The court reasoned that:

> The insurance company clearly could cancel the policy upon proper notice and could if desired offer a different policy to the assured, who would be free to accept or reject the proffered policy; or *the company could refuse to renew except upon altered terms and conditions.* The company is not locked in for an extended period of time or *ad infinitum* so to speak in its contract obligations if proper steps are taken to make a new or altered contract with its assured.

*Southern Farm,* 395 F.2d at 181 (emphasis added).

Similarly, *Wold* is distinguishable from the present case. In *Wold,* the insurer attempted to add a limiting endorsement to a policy which had an automatic renewal clause and the court held that the endorsement was not supported by sufficient consideration. *Wold,* 749 S.W.2d at 348. *Wold* involved a group life insurance policy which contained a renewability endorsement providing that the policyholder could renew the policy at the conclusion of each year by paying the renewal premiums. *Id.* at 347. The automatic renewal provided a mechanism for renewing the contract without a bargained for exchange; thus, the added limiting endorsement was not supported by consideration.

Unlike *Wold,* the policies issued to the bank contained no provision for automatic renewal; instead, each renewal was the product of a bargaining process. Upon expiration, the bank was required to file a renewal application which provided American Casualty with detailed information. American Casualty then issued a quotation enumerating the exclusions, the premium and other material facts. Once the renewal quotation was accepted by the bank through its chief execu-

tive officer or chairman of the board, the renewal policy was issued. Thus, each renewal was the product of a bargained for exchange in which American Casualty's willingness to renew the policy was the consideration exchanged for the bank's willingness to accept the offered terms.

The present case is analogous to *St. Louis Bank for Savings FSB v. American Casualty Company*, 927 F.2d 1042 (8th Cir.1991), where this court disposed of an argument similar to that advanced by the directors, officers and RTC. *St. Louis Bank* rejected the argument that a regulatory exclusion issued in a renewal policy must be supported by additional consideration. The court stated:

> . We read *Southern Farm Bureau* as requiring consideration to support the modification of an insurance policy during the policy period. As we recognized in *Southern Farm Bureau*, however, an insurance company can offer a new or altered contract to the insured at the expiration of the policy period, which the insured is free to accept or reject. Here, American Casualty notified St. Louis Bank that the renewed policy ... would bring about a substantial reduction in insurance coverage. The consideration exchanged for St. Louis Bank's willingness to accept the policy ... was American Casualty's willingness to renew the insurance.

927 F.2d at 1044. Moreover, the court concluded that "given the fact that the policy was not an automatic renewal [4] and was issued on the basis of a new quotation ... adequate consideration supported the policy." *Id.* *Southern Farm Bureau* governs the case before us.

■ The record demonstrates that American Casualty took appropriate measures in notifying the bank of the regulatory exclusion. The 1985 quotation for renewal specifically enumerates the regulatory exclusion, and the 1985 policy issued by American Casualty included the exclusion. The 1986 quotation for renewal again enumerated the regulatory exclusion and the exclusion again was included in the policy which the bank officials accepted. Thus, the directors and officers would have been able to discover the regulatory exclusion had they exercised minimal diligence in purchasing the renewal policies. Arkansas law imposes upon insureds the duty to educate themselves concerning their insurance policies. *Continental Cas. Co. v. Didier*, 783 S.W.2d 29, 31 (Ark.1990).

The situation before us is exactly that distinguished in *Southern Farm Bureau*, where this court made clear that an insurance company could refuse to renew, except upon altered terms and conditions and is not locked in for an extended period of time if proper steps are taken to make a new or altered contract with its insured. *Southern Farm Bureau*, 395 F.2d at 181. This case involves the renewal of a policy rather than an attempt to add an exclusion during a policy period. Thus the district court erred in relying on *Southern Farm Bureau* in holding that the exclusion failed for want of consideration. The regulatory exclusion in the 1985–86 policy was valid and supported by consideration. When it was again incorporated in the 1986–87 policy, it remained valid and enforceable.

This court has upheld the validity of regulatory exclusions on previous occasions. *See, e.g., Adams v. Greenwood*, 10 F.3d 568, 570–71 (8th Cir.1993); *St. Paul Fire & Marine Ins. Co. v. F.D.I.C.*, 968 F.2d 695, 701 (8th Cir.1992); *American Cas. Co. v. F.D.I.C.*, 944 F.2d 455, 460–61 (8th Cir.1991). It is apparent that the regulatory exclusion is applicable under the facts of this case.

Therefore, we reverse the judgment of the district court and order that judgment be entered in favor of American Casualty Company of Reading, Pennsylvania.

---

4. Thus, the court's comment also distinguishes *Wold* without mentioning it by name.