**Billie LANDRETH, as Executrix of the estate of Guy Bailey and Ludie Bailey, deceased, Appellant,**

v.

**FIRST NATIONAL BANK OF CLEBURNE COUNTY,**
**Appellee,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Third Party.**

**No. 93–3936.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1994.

Decided Jan. 19, 1995.

Thomas W. Mickel, Little Rock, AR, for appellant.

Kathryn R. Norcross, F.D.I.C., Washington, DC, R. Bryan Tilley, Heber Springs, AR, appeared on the brief, for appellee.

Before McMILLIAN, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and MAGILL, Circuit Judge.

MAGILL, Circuit Judge.

Billie Landreth appeals the district court's order granting First National Bank of Cleburne County (FNBC) and Federal Deposit Insurance Corporation (FDIC) summary judgment on Landreth's complaint for refusal to honor a certificate of deposit (CD). Landreth argues the district court erred in determining that the statute of limitations had run. We reverse.

## I. BACKGROUND

Guy and Ludie Bailey purchased a CD in the amount of $2900 from the Bank of Quitman on March 18, 1970, which paid interest

for only six months. The Baileys placed this CD into a safe deposit box in the Bank of Quitman where it remained for twenty-one years, until 1991. On November 11, 1982, the Bank of Quitman was declared insolvent by the Arkansas Bank Department, which appointed the FDIC as receiver of the Bank of Quitman. On November 12, FNBC purchased certain assets and liabilities of the Bank of Quitman, including all time and demand deposits, from the FDIC. FNBC also received an indemnity agreement from the FDIC. FNBC currently uses the building that housed the former Bank of Quitman (where the Baileys' safe deposit box is located) as its main office. On September 3, 1991, Mr. Bailey negotiated the CD to Olmsted Funeral Home to prepay funeral expenses for himself and his wife.

When the funeral home presented the CD for payment to FNBC, they dishonored it, stating they had no record of the CD. The funeral home explained the problem to Landreth, the Baileys' only child, and returned it to her. Landreth also presented the CD for payment to FNBC in late September again without success.

Landreth sued FNBC as attorney-in-fact for the Baileys[1] in the state circuit court alleging damages from FNBC's failure to pay the CD. FNBC brought a third-party complaint against the FDIC under its Indemnity Agreement. FDIC removed the case to federal court. The district court granted FDIC's motion for summary judgment against Landreth on alternative grounds: (1) that the statute of limitations began to run on September 18, 1970, when the six months' payment of interest on the CD expired; and (2) that a demand must be made within a reasonable time and the failure to make a

demand for payment for over twenty years was unreasonable as a matter of law. Landreth appeals from this order. On June 22, 1994, pursuant to Eighth Circuit Rule 27B(a), the clerk of this court entered an order substituting Landreth as executrix for the Baileys.

## II. DISCUSSION

### A. Standard Of Review

We review the district court's grant of summary judgment de novo. Our task is to determine whether the evidence, viewed in the light most favorable to the nonmoving party, shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Commercial Union Ins. Co. v. McKinnon*, 10 F.3d 1352, 1354 (8th Cir.1993). The district court's decision was based on Arkansas law. We review the district court's interpretation of state law de novo, giving its decision no deference. *Slaughter v. American Casualty Co.*, 37 F.3d 385, 387 (8th Cir.1994) (citing *Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991)).

### B. Statute of Limitations

Landreth argues that a demand was required before the statute of limitations for the CD began to run. Landreth asserts that the district court erred when it determined that the statute of limitations for the CD expired prior to Landreth's filing suit because it began to run when the CD no longer paid interest or that alternatively Landreth did not make a demand for payment within a reasonable time.[2]

---

1. Subsequently, the Baileys have both passed away.

2. The CD was in the amount of $2900 and stated in relevant part:

72.50 Int. due Sept. 18, 1970 ... PAYABLE TO *[Guy Bailey or Ludie Bailey] or survivor* OR ORDER *6* MONTHS AFTER DATE, ON RETURN OF THIS CERTIFICATE PROPERLY INDORSED.... NO INTEREST AFTER MATURITY. THE BANK IS PROHIBITED BY FEDERAL LAW FROM PAYING THIS DEPOSIT IN WHOLE OR IN PART BEFORE ITS MATURITY AND FROM PAYING INTEREST

AFTER MATURITY. NOT SUBJECT TO CHECK.

J.A. at 131. The district court found that this CD was a due date CD. To make this determination, the district court had to find that the CD was "payable on elapse of a definite period of time after sight or acceptance or at a fixed date or dates or at a time or times readily ascertainable at the time the [CD] [was] issued" and did not "state[] that it [was] payable on demand or at sight, or otherwise indicate[] that it [was] payable at the will of the holder, or ... [did] not state any time of payment." Ark.Code Ann. § 4–3–108(a) & (b) (Michie 1991) (definitions of pay-

■ Arkansas has a six-year statute of limitations for both demand and due date CDs that begins to run only after a demand for payment has been made. The statute provides that:

> [a]n action to enforce the obligation of a party to a certificate of deposit to pay the instrument must be commenced within six (6) years *after demand for payment is made to the maker,* but if the instrument states a due date and the maker is not required to pay before that date, the six-year period begins *when a demand for payment is in effect* and the due date has passed.

Ark.Code Ann. § 4–3–118(e) (Michie 1991) (emphasis added). Accordingly, whether a CD is a demand or due date CD is immaterial for the purpose of determining when the statute of limitations begins to run. The dispositive fact is whether or not the instrument is a CD, which is undisputed in this case. Assuming that the district court was incorrect and the CD at issue is a demand CD, under the first prong of subsection (e), the statute of limitations does not begin to run until a demand for payment is made. Assuming, without deciding, that the district court was correct that the CD at issue is a due date CD, under the second prong of subsection (e), the statute of limitations does not begin to run until "a demand for payment is in effect and the due date has passed." *Id.* (emphasis added). Therefore, a demand for payment is required to trigger the statute of limitations regardless of whether the CD is a demand or due date CD.

It is undisputed that a demand for payment was not made on FNBC until September 1991. Accordingly, the district court erred when it determined that the statute of limitations automatically began to run on September 18, 1970, the date on which the CD ceased to pay interest, because it ignored the plain language of § 4–3–118(e) which requires a demand to be in effect before the statute of limitations begins to run. Thus, the six-year statute of limitations did not begin to run until September 1991, when demand for payment was made on FNBC.

## C. Reasonableness of Demand

■ The district court held in the alternative that Arkansas requires a demand for payment to be made within a reasonable time. Neither the district court nor the parties have cited any authority for the proposition that Arkansas requires a demand to be made within a reasonable time. We believe the district court erred by construing § 4–3–118(e) to require a demand for payment to be made within a reasonable amount of time.

As is evident throughout the Uniform Commercial Code, when the Arkansas legislature intends to require an action to be taken within a reasonable time, this intention is expressed within the terms of the particular statute. The Arkansas Uniform Commercial Code is replete with explicit requirements that actions be taken within a reasonable time.[3] Accordingly, under the maxim *expressio unius est exclusio alterius,* we will not imply a reasonableness requirement into a statute that is silent on the subject. Furthermore, Ark.Code Ann. § 4–1–204 states:

able on demand and at definite time). Generally, judicial resolution of disputed issues such as this are inappropriate on a motion for summary judgment. Additionally, on a motion for summary judgment, the district court is to view the facts in the light most favorable to the nonmoving party. *Commercial Union Ins. Co.,* 10 F.3d at 1354. However, we do not address this issue as it is immaterial to the resolution of the issues presented in this case.

3. *See, e.g.,* § 4–3–302(f) (notice must be received at time and manner giving reasonable opportunity to act on it to preclude holder in due course status); § 4–3–311(c)(1) (claim is not discharged by accord and satisfaction if "within a reasonable time before the tender"); § 4–8–319 (con-

tract for sale of securities not enforceable unless written confirmation is received within a reasonable time); § 4–8–405(1) (precluding owner of certificated security from asserting claim against issuer for register or transfer unless he provides notice of loss or destruction within reasonable time); § 4–9–108 (security interest in after-acquired property deemed taken for new value if "made pursuant to the security agreement within a reasonable time after new value is given"). Additionally, Chapter Two of the Arkansas Uniform Commercial Code contains at least 20 specific references and Chapter Two A at least 16 specific references to actions that must be taken within a reasonable time.

(1) Whenever this subtitle [U.C.C.] requires any action to be taken within a reasonable time....

(2) What is a reasonable time for taking any action depends on the nature, purpose, and circumstances of such action.

The plain meaning of subsection (1) shows that if the Arkansas legislature wants an action to be taken in a reasonable time, they express it within the text of the statute as they have done repeatedly throughout the Uniform Commercial Code. Since § 4–3–118(e) is silent, we will not imply a requirement that demand for payment be made within a reasonable time.

Subsection (b) of § 4–3–118 also supports our decision that to trigger the statute of limitations for a CD, a demand need not be made within a reasonable time. Subsection (b)[4] bars an action on a demand note, but specifically excludes CDs, if interest or principal on the note is not paid for a period of ten continuous years. The exclusion of CDs from the bar of subsection (b) shows that the Arkansas legislature considered whether or not the statute of limitations for CDs should begin without a demand. Subsection (e) contains no similar events that will trigger the statute of limitations when a demand has not been made. Because the Arkansas legislature clearly knew how to specify events that trigger the statute of limitations in lieu of a demand, as illustrated in § 4–3–118(b), the failure to enunciate any similar events triggering the statute of limitations in lieu of a demand with respect to a CD indicates that the legislature did not intend the statute to begin running until a demand for payment was made. Accordingly, we will not imply a reasonableness requirement into § 4–3–118(e), and we hold that the district court erred when it did so.

Our holding that a demand need not be made within a reasonable time is also supported by the comments to the Uniform Commercial Code. Comment 1 to U.C.C. § 3–122 (1990)[5] states that CDs are issued with the understanding that they will be held for long periods of time, which often exceed the period of the statute of limitations, and that the expectation and custom of the banking industry requires a demand for payment to be made before any liability is incurred by the bank.

The district court cites *Whitlock v. Bank of Maryville* as support that it is adopting the majority position which requires a demand to be within a reasonable time. 612 S.W.2d 481, 484 (Tenn.App.1980). However, the jurisdictions that require a demand for payment to be made to trigger the statute of limitations for a CD do not agree whether the demand must be made in a reasonable time. 10 Am.Jur.2d *Banks* § 466 (1964). Some jurisdictions require the demand to be made within a reasonable time.[6] There appears to be a modern trend wherein jurisdictions do not require a demand to be made within any certain amount of time.[7] Accordingly, we believe that our holding is in line with the

---

4. Subsection (b) provides that:

  Except as provided in subsection (d) or (e), if demand for payment is made to the maker of a note payable on demand, an action to enforce the obligation of a party to pay the note must be commenced within six (6) years after the demand. *If no demand for payment is made to the maker, an action to enforce the note is barred if neither principal nor interest on the note has been paid for a continuous period of ten (10) years.*

  Ark.Code Ann. § 4–3–118(b) (emphasis added).

5. Arkansas has adopted the Uniform Commercial Code with slight modifications.

6. This view does not appear to be the modern trend. *See Whitlock v. Bank of Maryville,* 612 S.W.2d 481, 484 (Tenn.App.1980) ("[u]nder the majority view, a demand must be made in a reasonable time"); *Stripling v. New England Sav.*

*Bank,* 1993 WL 73565 (Conn.Super. Mar. 3, 1993); *Emerson v. North Am. Transp. & Trading Co.,* 303 Ill. 282, 135 N.E. 497, 500–01 (1922).

7. *See Edelmann v. Chase Manhattan Bank, N.A.,* 861 F.2d 1291, 1301–02 (1st Cir.1988) (in New York, statute of limitations for CD begins to run upon presentment and refusal to pay); *Jackson v. Citizens Trust Bank,* 133 Ga.App. 371, 211 S.E.2d 17, 19 (1974) ("statute of limitation began to run after demand and not after the first date on which the depositor might have made the demand if he had in fact understood the true facts of the case"); *Anderson v. First Nat'l Bank of Chariton,* 144 Iowa 251, 122 N.W. 918, 920 (1909) (holder of CD must make demand within reasonable time to hold indorser liable, but demand to maker may be made at any time because maker's liability is absolute); *Erwin v. Erwin,* 111 Ind.App. 448, 41 N.E.2d 644, 647 (1942) (en banc) ("the statute of limitations does not begin to run against a certificate of deposit

modern trend that a demand need not be made in a reasonable amount of time.

As such, we believe the district court erred when it determined that Arkansas would require a demand for payment on a CD to be made within a reasonable time. The plain language of § 4–3–118(e) requires only a demand to trigger the statute of limitations. As illustrated in § 4–3–118(b), the Arkansas legislature knew how to limit the time within which to make a demand. Consequently, we will not infer a reasonableness requirement into the statute of limitations. Under the plain language of § 4–3–118(e), the six-year statute of limitations did not begin to run until a demand for payment was made. Landreth made a demand on FNBC in September 1991; suit was filed on May 27, 1992, well within the six-year statute of limitations. Accordingly, her suit is not barred by the Arkansas statute of limitations and the district court erred when it determined otherwise.

### D. Laches

 FDIC argues that the doctrine of laches bars Landreth's claim as an alternative basis to uphold the district court's grant of summary judgment. We find this contention meritless.

In Arkansas, "the doctrine of laches is only applicable where equitable relief is sought; where a party is only seeking to enforce a legal right not barred by the statute of limitations and is not seeking equitable relief, the doctrine of laches has no application even if it could otherwise apply." *Rogers Iron & Metal Corp. v. K & M, Inc.*, 22 Ark.App. 228, 738 S.W.2d 110, 111 (1987). Laches is not appli-

cable to actions for damages, accounting, or the recovery of money or property fraudulently obtained. *Anadarko Petroleum v. Venable*, 312 Ark. 330, 850 S.W.2d 302, 308 (1993) (citation omitted). Landreth's claim is for money damages for the failure to pay a CD and does not seek any equitable relief. Laches is not available as a defense to this action because Landreth brought her claim for damages within the period of the statute of limitations and she is not seeking any equitable relief. *Rogers Iron & Metal Corp.*, 738 S.W.2d at 111.

FDIC asserts that laches is available as defense to this case under *J.W. Reynolds Lumber v. Smackover St. Bank*, 310 Ark. 342, 836 S.W.2d 853 (1992). However, *Smackover* specifically states that "[the defense of laches] is cognizable *only* in courts of equity and is available *only* where equitable relief is sought." *Id.*, 836 S.W.2d at 859.[8] Since Landreth's claim was originally brought in the state circuit court, not the chancery court, and does not seek any equitable relief, it is clear that laches is not a defense available to either FNBC or the FDIC.

### III. CONCLUSION

For the above reasons, we reverse the decision of the district court finding that the statute of limitations had expired, and remand the case back to the district court for further proceedings consistent with this opinion.

---

issued by a bank, payable upon the return of a certificate properly endorsed, until such certificate has been returned and demand for payment made"); *Miller v. Bank of New Orleans*, 426 So.2d 1382, 1382, 1384 (La.Ct.App.1983) (five-year statute of limitations on CD issued on April 4, 1972, with maturity date of July 5, 1972, did not begin to run until demand for payment was made); *In re McKeyes' Estate*, 315 Mich. 369, 24 N.W.2d 155, 159–60 (1946); *State v. Northwestern Nat'l Bank of Minneapolis*, 219 Minn. 471, 18 N.W.2d 569, 578–80 (1945); *Pagano v. United Jersey Bank*, 276 N.J.Super. 489, 496, 648 A.2d 269, 272 (1994) ("statute of limitations did not start to run until plaintiff's demand for payment was made and refused"); *Bank of Commerce v. Harrison*, 11 N.M. 50, 66 P. 460, 462 (1901) (the statute of limitations

does not begin to run against a certificate of deposit until presentation and demand of payment); *see also* 23 A.L.R. 1 (1923); 128 A.L.R. 137 (1942); *cf. Hinds v. Southwestern Sav. Ass'n of Houston*, 562 S.W.2d 4, 5 (Tex.Civ.App.1977) (statute of limitations for savings and loan depositor begins to run only after demand is made).

**8.** The FDIC may not realize that in Arkansas courts of law and equity are separate courts and have not merged. This may be why they mistakenly rely on *Smackover* for the proposition that laches may be asserted as a defense to a cause of action for damages when *Smackover* explicitly prohibits a defense of laches if equitable relief is not sought. 836 S.W.2d at 859.