**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1409-17T1

NEZIRE SOYALAN,

     Plaintiff-Respondent,

v.

JANET MCCORMICK,

     Defendant,

and

GARY MCCORMICK,

     Defendant-Appellant.

_____

Submitted January 30, 2019 – Decided April 23, 2019

Before Judges Vernoia and Moynihan.

On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-0766-16.

Epstein Ostrove, LLC, attorneys for appellant (Daniel N. Epstein, on the briefs).

Nezire Soyalan, respondent pro se.

PER CURIAM

In this landlord-tenant matter, defendant-tenant Gary McCormick appeals from an October 13, 2017 Law Division final judgment entered after a bench trial finding him liable for past due rent to plaintiff-landlord Nezire Soyalan. Because we find that the court's determination is supported by substantial credible evidence in the record, we affirm the order finding defendant liable to plaintiff for five months' rent, plaintiff liable to defendant for the return of an $1800 security deposit and plaintiff liable to defendant in the amount of $725 for the repairs defendant made to the subject property. However, we remand for further findings regarding defendant's counterclaim alleging defendant is entitled to additional sums from plaintiff for the return of his security deposit, as well as statutory damages and attorney's fees under the Security Deposit Act (SDA), N.J.S.A. 46:8-19 to -26, for plaintiff's alleged failure to return defendant's security deposit within thirty days of the termination of defendant's tenancy, and plaintiff's failure to give defendant an itemized list of security deposit deductions.

I.

We discern the following facts from the testimony and evidence presented before the trial court. Defendant's tenancy began in 2004 when he signed a residential lease with plaintiff's mother for property located in

Freehold. At the time, plaintiff and her mother jointly owned the property. The monthly rent was $1850, and defendant secured the lease with a $2775 security deposit. Between 2004 and 2007, defendant missed or was late on several rent payments, which plaintiff's mother deducted from defendant's security deposit, reducing it to $1800.

In 2007, plaintiff's mother sent defendant a new lease that extended the term until 2010, increasing the monthly rent to $2050 and requiring a $3000 security deposit. Plaintiff's mother credited defendant with the $1800 balance from the original security deposit, and defendant paid the additional $1200 to satisfy the $3000 security deposit requirement. The second lease included a default provision giving plaintiff the option to terminate the lease and reenter the premises if defendant defaulted on his payments or failed to comply with the lease terms. To exercise this provision, plaintiff was required to give defendant written notice of the default and seven days to cure the default. The lease also required defendant to pay the rent by check, cashier's check, or money order. Defendant signed the second lease and sent it to plaintiff's mother.

Plaintiff's mother did not sign the second lease, but thereafter accepted defendant's $2050 rent checks. In 2008, plaintiff's mother deeded her interest

A-1409-17T1

in the property to plaintiff. Defendant remained a tenant through December 2015.

Between 2010 and 2015 defendant paid his monthly rent almost exclusively by check. Defendant made his payments by delivering them to plaintiff's family-owned gas station. Sadik,[1] plaintiff's brother and the gas station's operator, typically accepted defendant's payments. If Sadik was not at the gas station, one of Sadik's employees accepted defendant's payments. Sadik testified defendant seldom paid the rent in cash, explaining that defendant did not pay "cash too many times."

Plaintiff's sister-in-law, Senra, acted as the family's bookkeeper. Senra testified that in 2010[2] she noticed defendant was behind on his rent payments. To correct this problem, Senra told Sadik to notify defendant he was late. Additionally, in 2010, Senra withdrew $1883.70 of defendant's $3000 security deposit because plaintiff "needed it."

---

[1] Plaintiff's family shares the same surname, and therefore we refer to each family member by his or her first name. We intend no disrespect in doing so.

[2] The trial court found that the statute of limitations barred plaintiff's claims for "rent accruing before December 15, 2009." Therefore Senra was barred from testifying to her bookkeeping practices prior to that date. See N.J.S.A. 2A:14-1.

A-1409-17T1

When the second lease terminated in 2010, defendant continued to live at the property and pay monthly rent in the amount of $2050. Senra testified, however, that problems with defendant's payments continued. Beginning in 2013 Sadik began giving defendant receipts for his payments. Sadik testified he gave defendant receipts from at least four different receipt books, but he did not know if his employees gave defendant receipts when they received defendant's rent payments. Senra initially denied that defendant ever paid his rent in cash. However, on cross-examination she acknowledged defendant had paid his rent in cash, but she did "not remember how many times or when."

In 2015, there was a fire in the property's garage, and plaintiff's insurance company paid plaintiff approximately $9000 to repair the property. Plaintiff testified she could not reach defendant to inform him that workers were coming to repair the house, but defendant testified that although he spoke with plaintiff about the workers, they never appeared at the property. Defendant repaired the fire damage, and applied four months' rent to cover his repair costs. Defendant testified that his application of the rent payments did not cover all of the repair costs, and plaintiff therefore owed him $725.

A-1409-17T1

In September 2015, plaintiff delivered a letter to defendant informing him that he must vacate the property by October 31, 2015. Senra testified defendant did not leave the property until December 2015.

Plaintiff filed a complaint in the Law Division, Special Civil Part, claiming defendant owed $20,700 in rent payments.[3] After plaintiff filed suit, Senra utilized one of Sadik's receipt books and plaintiff's bank statements to create a ledger that purportedly documented defendant's rent payments. Based on the ledger, Senra claimed defendant owed $14,250 in rent from 2010-2012, and $22,550 from 2013-2015. After the court granted plaintiff's motion to transfer the case from the Special Civil Part, plaintiff filed an amended complaint. Plaintiff alleged the same cause of action as in the initial complaint, but did not specify the exact amount of rent defendant allegedly owed. Defendant filed an answer denying liability, counterclaimed for the $725 he claimed plaintiff owed him for repairs to the property and alleged plaintiff violated the SDA by failing to return defendant's security deposit or otherwise by failing to provide defendant with an itemized notice of deductions from the security deposit.

---

[3] Plaintiff waived her entitlement to $5700, which exceeded the jurisdiction of the Special Civil Part. See R. 6:1-2(a)(1) (providing that the amount in controversy before the Special Civil Part must not exceed $15,000).

6

Following a three-day trial, the court rendered its findings in an oral decision. The court determined that, although plaintiff's mother never signed the second lease, plaintiff's acceptance of the monthly rent rendered the lease legally operable and controlled the terms of the parties' relationship until 2010. The court found that following termination of the second lease in 2010, plaintiff's continued acceptance of defendant's rent payments created a month-to-month tenancy until defendant quit the premises in December 2015.

The court further determined that Senra's and Sadik's testimony regarding defendant's rent payments was "inaccurate and unreliable." The court noted that no contemporaneous documentation of defendant's payments was kept until Sadik began using the receipt books in 2013, and Senra's ledger was created only after plaintiff sued defendant. Moreover, the court explained that Senra's ledger was created using only one of Sadik's four receipt books, and Sadik testified he had no idea if his employees gave defendant receipts when he was not present at the gas station to accept defendant's rent.

During the trial, defendant moved for a directed verdict after plaintiff's presentation of evidence. The court denied the motion, finding plaintiff had presented a prima facie case for a breach of contract. See R. 4:37-2(b); see also Dolson v. Anastasia, 55 N.J. 2, 5-6 (1969) ("The trial court is not

concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion."). After the court denied his motion, defendant produced bank records and a summary of his rent payments at trial showing that from 2010 to 2015, he paid all but six months of rent by check or cashier's check. Defendant's summary of his rent payments included the check number and date of the check for each month, and he denoted each month for which he did not have a bank statement with a question mark. He testified that for the months bearing a question mark, he "assume[d]" that he paid the rent that month in cash, adding he "paid [in cash] more than one . . . minimum of three, four times." Defendant later revised his estimate, testifying that he paid his rent in cash "at least four or five times over the years."

The trial court found that "[t]here was . . . testimony that at least one payment was made by cash," but otherwise found defendant's testimony that he paid rent in cash for the other five months for which he did not produce bank records was not credible, and held he was liable to plaintiff for five months' rent totaling $10,250.

The court also credited defendant with $1800 that plaintiff failed to return from his security deposit, as well as the $725 defendant alleged plaintiff

A-1409-17T1

owed him for the repairs. The court found defendant's total liability to plaintiff is $7725, and entered a final judgment in plaintiff's favor. This appeal followed.

On appeal, defendant makes the following arguments:

A. Standard of Review.

B. The Trial Court Erred in That (1) It Entered Judgment Without Finding that Plaintiff Had Satisfied Its Burden of Proof That Defendant Had Not Paid Rent; and (2) Shifted the Burden of Proof to the Defendant to Show That He Had More Likely Than Not Made Cash Payments to the Plaintiff in 2010 Through 2014.

C. The Trial Court erred in ruling in favor of the Plaintiff as Plaintiff breached the terms of the lease by never providing notice to Defendant that Defendant was in default for nonpayment of rent as required by paragraph 24 of the first lease and paragraph 30 of the second lease.

D. The Trial Court Erred in Ruling in Favor of the Plaintiff With Regard to the Security Deposit as (1) the Evidence and Testimony Before the Court Showed That Defendant's Security Deposit Was Greater Than $1,800.00; and (2) There is No Proof That the Landlord Properly Made Deduction to the Security Deposit and Provided an Itemized Statement of the Deduction Per Paragraph 6 of the Lease and in Violation of N.J.S.A. 46:8-21.1

E. The Trial Court Erred in Finding That Plaintiff Was Entitled to Rent For the Month of November 2015 as

9

This Amount Was Not Requested or Made an Issue by the Plaintiff

## II.

We defer to a judge's bench trial findings and conclusions of fact based on his or her ability to perceive witnesses and assess credibility. See Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974). We do not "engage in an independent assessment of the evidence as if [we] were the court of first instance," State v. Locurto, 157 N.J. 463, 471 (1999), and will "not weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence," Mountain Hill, LLC v. Twp. of Middletown, 399 N.J. Super. 486, 498 (App. Div. 2008) (quoting State v. Barone, 147 N.J. 599, 615 (1997)). "[W]e do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence. . . ." In re Tr. Created By Agreement Dated December 20, 1961 ex rel. Johnson, 194 N.J. 276, 284 (2008) (quoting Rova Farms, 65 N.J. at 483-84). We review the trial court's interpretation of law de novo. Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

A-1409-17T1

"Reversal is reserved only for those circumstances when we determine the factual findings and legal conclusions of the trial judge went 'so wide of the mark that a mistake must have been made.'" Llewelyn v. Shewchuk, 440 N.J. Super. 207, 214 (App. Div. 2015) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007)). Such a mistake "can arise in many ways—from manifest lack of inherently credible evidence to support significant findings, obvious overlooking or underevaluation of crucial evidence, or a clearly unjust result." Pioneer Nat'l Title Ins. Co. v. Lucas, 155 N.J. Super. 332, 338 (App. Div. 1978). However, "[i]f we are satisfied that the trial judge's findings and result could reasonably have been reached on sufficient credible evidence in the record as a whole, his [or her] determination should not be disturbed." Ibid. "Consequently, when a reviewing court concludes there is satisfactory evidentiary support for the trial court's findings, 'its task is complete and it should not disturb the result[.]'" Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015) (quoting Beck v. Beck, 86 N.J. 480, 496 (1981)).

In a breach of contract action, "[o]ur law imposes on a plaintiff the burden to prove" that a defendant violated the terms of the contract. Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016). The plaintiff must prove his

11

or her case by a preponderance of the evidence. Ibid. That evidentiary standard requires "a litigant [to] establish that a desired inference is more probable than not." Ibid. (quoting Biunno, Current N.J. Rules of Evidence, cmt. 5(a) on N.J.R.E. 101(b)(1) (2005)).

Here, the court found that when the second lease terminated in 2010, defendant's leasehold continued as a month-to-month tenancy. See N.J.S.A. 46:8-10. Thus, the "covenants and obligations of both parties," other than the lease term, continued following the 2010 conversion to a month-to-month tenancy. J.M.J. N.J. Props., Inc. v. Khuzam, 365 N.J. Super. 325, 334 (App. Div. 2004). In pertinent part, the lease required that defendant pay his monthly $2050 rent by check, cashier's check, or money order until he vacated the premises in December 2015.

Based on the totality of the evidence presented at trial, we are convinced there is sufficient credible evidence supporting the court's determination that defendant failed to pay his monthly rent on five occasions from 2010 to December 2015. Following the presentation of plaintiff's evidence, the court determined plaintiff presented sufficient evidence establishing a prima facie case that defendant failed to pay his rent when due in accordance with the

requirements of his month-to-month tenancy, and denied defendant's motion for an involuntary dismissal.[4]  See R. 4:37-2(b).

Defendant presented evidence showing that, although he generally paid the rent by check in accordance with the requirements of his month-to-month tenancy, he failed to do so on six occasions between 2010 and 2015.   Thus, the issue before the court was whether there was credible evidence establishing that despite his failure to comply with the requirement that he pay his rent by check, he otherwise paid his rent for the disputed six months in cash.  After the court denied defendant's motion for involuntary dismissal, it could not choose to ignore evidence presented by defendant that bolstered plaintiff's claim.  See Joseph Hilton & Assocs., Inc. v. Evans, 201 N.J. Super. 156, 165-66 (App. Div. 1985) ("[Rule 4:37-2(b)] tacitly disapproves 'a practice enabling a judge to view as nonexistent probative evidence from a defendant which may cure the deficiencies in a plaintiff's case . . . .'" (quoting Castro v. Helmsley Spear, Inc., 150 N.J. Super. 160, 164 (App. Div. 1977))).  The court considered the totality of the evidence, made credibility determinations to which we defer,

---

[4]  Defendant does not appeal from the court's denial of his motion for an involuntary dismissal or argue the court erred by denying the motion. Skldowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) (holding that an issue not briefed on appeal is deemed waived).

Riley v. Keenan, 406 N.J. Super. 281, 301-02 (App. Div. 2009), and found not credible defendant's testimony that he "assume[d]" he paid five of the disputed six months' rent in cash.

We reject defendant's contention the court improperly shifted the burden of proof from plaintiff to defendant. To the contrary, the court correctly considered the totality of the evidence presented, see Joseph Hilton & Assocs., Inc., 201 N.J. Super. at 165-66, in making its final factual determination that it was more likely than not that defendant failed to pay five months' rent in accordance with the requirements of his tenancy, including the requirement that he pay his rent by check. The court was not obligated to ignore defendant's evidence in making its factual findings: it was required to consider the totality of the evidence presented. Ibid.

We also reject defendant's contention the court erred by failing to consider the default provision in the parties' lease agreement. Defendant argues that plaintiff breached the lease by failing to give defendant written notice of his alleged failure to timely pay rent six times between 2010 and 2015. We are not persuaded.

We interpret contracts de novo, see Manalapan Realty, 140 N.J. at 378, and we give "contractual terms 'their plain and ordinary meaning,'" Kieffer v.

14

Best Buy, 205 N.J. 213 (2011) (quoting M.J. Pacquet, Inc. v. N.J. Dep't of Transp., 171 N.J. 378, 396 (2002)).  Here, the lease provides that "if any default is made in the performance of or compliance with any other term or condition hereof, the lease, at the option of [plaintiff], shall terminate and be forfeited, and [plaintiff] may reenter the premises."  Under the lease's plain language, plaintiff was required to give defendant "written notice of any default or breach" only if she intended to terminate the lease and reenter the premises.  There is no evidence plaintiff acted to terminate the lease or reenter the premises due to nonpayment of rent during the relevant time period and, as such, the default provision did not require that plaintiff provide notice to defendant of his failure to pay his rent.  Defendant's tenancy terminated only when plaintiff gave defendant thirty days' notice to vacate the premises, as required by law in a month-to-month tenancy.  See N.J.S.A. 2A:18-56(b).

In sum, there is substantial credible evidence supporting the court's finding defendant failed to pay his rent for five months between 2010 and 2015 in accordance with the requirements of his month-to-month tenancy.  We are therefore satisfied the court's determination that defendant owed plaintiff five months' rent totaling $10,250 is founded on a consideration of the totality of

A-1409-17T1

the evidence, is supported by evidence the court properly determined is credible and must be affirmed.  See Rova Farms, 65 N.J. at 484.

Defendant also argues the court failed to address his counterclaim alleging plaintiff violated the SDA by failing to return his security deposit within thirty days of his tenancy's termination, and by failing to deliver an itemized list of deductions therefrom.  We agree and remand for further proceedings on the counterclaim.

The SDA requires that:

> Whenever money or other form of security shall be deposited or advanced on a . . . lease . . . agreement for the use or rental of real property as security for performance of the . . . lease . . . or to be applied to payments due upon such . . . lease . . . when due, such money or other form of security, until repaid or so applied including the tenant's portion of the interest or earnings accumulated thereon as hereinafter provided, shall continue to be the property of the person making such deposit or advance and shall be held in trust by the person with whom such deposit or advance shall be made for the use in accordance with the terms of the . . . lease . . . and shall not be mingled with the personal property or become an asset of the person receiving the same.
>
> [N.J.S.A. 46:8-19(a).]

The SDA also provides that "[w]ithin [thirty] days after the termination of the tenant's lease . . . the owner or lessee shall return . . . the sum so deposited plus

the tenant's portion of the interest or earnings accumulated thereon, less any charges expended in accordance with the terms of [the] . . . lease." N.J.S.A. 46:8-21.1. "If the landlord violates this section of the SDA, the tenant may bring suit, and 'the court upon finding for the tenant . . . shall award recovery of double the amount of said moneys, together with full costs of any action and, in the court's discretion, reasonable attorney's fees.'" Reilly v. Weiss, 406 N.J. Super. 71, 80 (App. Div. 2009) (quoting N.J.S.A. 46:8-21.1).

Here, the record shows defendant gave plaintiff a $2775 security deposit for the first lease, from which plaintiff deducted late rent payments reducing the balance to $1800. When the parties executed the second lease, defendant paid an additional $1200 to satisfy the $3000 security deposit requirement. Bank records produced at trial showed that in May 2010, Senra withdrew $1883.70 from a security deposit bank account because plaintiff "needed it." Findings of fact were not made as to the disposition of that sum, or where defendant's additional $1200 from the second deposit was maintained.

The SDA "was specifically 'intended to protect tenants from overreaching landlords who seek to defraud tenants by diverting rent security deposits to their own use.'" Id. at 83 (quoting Jaremback v. Butler Ridge Apartments, 166 N.J. Super. 84, 87 (App. Div. 1979)). The trial court did not

17

make findings of fact or conclusions of law regarding defendant's allegations that plaintiff violated the above provisions of the SDA. See R. 1:7-4; see also Barnett & Herenchak, Inc. v. State, Dep't. of Transp., 276 N.J. Super. 465, 471 (App. Div. 1994) ("It is required that in a non-jury civil action the trial court, at the conclusion of the trial, shall by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon.")

In addition, the trial court limited defendant's award and credit for the security deposit due to him to only $1800. In the first instance, the $1800 award does not account for the interest to which defendant is entitled because plaintiff was required to maintain the security deposit in an interest bearing account, see N.J.S.A. 46:8-19(a)(2) (requiring security deposits to be placed in interest bearing accounts), and the award also does not account for the additional $83.70 Senra removed from the bank account in May 2010. Second, the court did not address the additional $1200 security deposit defendant paid under the second lease. Last, the court did not consider or determine defendant's potential entitlement to double damages and reasonable attorney's fees available under the SDA. See N.J.S.A. 46:8-21.1. We therefore remand for further proceedings on defendant's counterclaim.

18

We affirm the trial court's finding that defendant is entitled to $725 for the costs of repairs he made to the property following the fire. The court found defendant credibly testified that, following the fire, "he grew tired of [plaintiff's] delay and inconvenience" in repairing the property and "decided to go ahead and do the repairs himself." The court also found defendant established he spent $8925 for the repairs, an amount which was "consistent with the approximate [$9000] plaintiff received from her insurance company for the very same repairs." The court's findings are supported by substantial credible evidence in the record, and we find no basis to disturb the court's determination. See Rova Farms, 65 N.J. at 484.

We affirm the trial court's order finding defendant liable to plaintiff for five months' past due rent totaling $10,250. We affirm the court's order finding defendant is owed $725 for repairs to the property. We also affirm the court's order finding defendant is entitled to a credit of $1800 for the return of his security deposit, but remand for a determination of whether any additional sums are due for the return of his security deposit, as well as whether defendant is entitled to any additional damages or attorney's fees on his counterclaim under the SDA. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

19

A-1409-17T1